Lewis et ux., Appellants, *v.* Fidelity & Casualty Co.

Argued April 20, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Harry Balis,* with him *Robert M. Bernstein,* for appellants.—De Baccias was engaged in carpentry work at time of accident.

The interpretation of the word "carpentry" was for the jury under proper instructions from the court, rather than one of law: Barnes v. Fidelity Mut. L. Assn., 191 Pa. 618; McBride v. Ins. Co., 90 Pa. Superior Ct. 35; McDonald v. Beneficial Assn., 80 Pa. Superior Ct. 32; McKeesport Machine Co. v. Ins. Co., 173 Pa. 53.

Defendant is liable because the issuance of the policy to De Baccias was with full knowledge of the nature and kind of work that De Baccias was doing: Conestoga Cigar Co. v. Finkle, 144 Pa. 159; McDonough v. Jolly, 165 Pa. 542; Miller v. Ry., 179 Pa. 350; Bialas v. Elder, 44 Pa. Superior Ct. 219.

Defendant is estopped from denying liability after it had assumed to defend the action with full knowledge of all the facts: Malley v. Indemnity Co., 297 Pa. 216.

*Robert P. F. Maxwell,* with him *George F. Blewett,* for appellee.—The statement of claim is insufficient in law, in that it does not set forth the occurrence of any external fact or of any condition bringing the policy into effect or operation: Phillips Horse Car Co. v. Fidelity & Casualty Co., 160 Pa. 350.

Under the pleadings, this is a case solely for the application of the basic rule of restriction to the terms of the contract: York Haven Water Power Co. v. Phosphorus Co., 229 Pa. 194; Book v. Nail Co., 151 Pa. 499.

The fact that the contract under construction is a policy of insurance does not, in itself, under the circumstances appearing in the statement, alter the basic rule: Weisenberger v. Ins. Co., 56 Pa. 442; Johnson v. Stewart, 243 Pa. 485.

OPINION BY MR. JUSTICE KEPHART, May 25, 1931:

De Baccias, a contractor, was engaged in altering a building, and Mary Lewis, a stranger, one of plaintiffs,

was injured through the negligent performance of this work by one of the former's employees. De Baccias had a contract of indemnity with defendant, insuring him "against loss......for damages on account of bodily injuries......suffered as a result of an accident occurring......by any person or persons not employed by the assured, while at or about the work of the assured described in statement 4 of the schedule, during the prosecution of the said work." The work described in statement 4 of the schedule is "carpentry." Plaintiffs sued De Baccias and under the provisions of the policy the latter notified the insurer of the accident. When the summons was served it was immediately forwarded to defendant, about July 1st. It was not until the following January that the insured was notified by the company that it denied liability and would not defend his case. A verdict was later recovered against De Baccias; Mary Lewis and her husband then instituted this action against the insurer under the provisions of the policy which permits a judgment creditor to recover a judgment against the insurance company in the same way that the insured might recover had he paid the judgment. The court below held that neither the original statement of claim nor the amended statement was sufficient in law to sustain the recovery from the insurance company. Judgment was entered for defendant and this appeal followed.

Both statements of claim by plaintiff contained an averment that De Baccias "was engaged in doing certain alteration work about premises 2810 'D' Street, ...... Philadelphia. In connection with said work, it became necessary for De Baccias to lower the wooden floor of premises 2810 'D' Street. That incidental to the lowering of the floor, and in order to comply with building laws and regulations of the City of Philadelphia, it became necessary to excavate the cellar of the said building in order that there might be sufficient space between the floor of the cellar and the floor above. That while

his employee was engaged in lowering the floor and in excavating the cellar, a small quantity of dirt was thrown by one of the employees of De Baccias on the sidewalk fronting premises 2810 'D' Street, causing Mary Lewis, one of the plaintiffs, not being employed by the said De Baccias, to fall and receive certain bodily injuries."

The court below held that the word "carpentry" did not embrace excavating a cellar as described in the statement. A contract of indemnity insurance should be construed so as to give effect to the intent of the parties: Bingell v. Royal Ins. Co., Ltd., 240 Pa. 412, 417. It is impossible to itemize all the incidents ordinarily embraced by a given activity. They are generally expressed by a word which under special conditions may or may not express the true nature of such activity. The word "carpentry" may be used to indicate a certain form of individual work or state of work; it may also indicate a species or type of contracting. But when it is used it must be construed in the light of the subject dealt with. The insurance company must know the customary method of conducting business, and the common, ordinary understanding of the terms employed therein. See McKeesport Machine Co. v. Ben Franklin Ins. Co., 173 Pa. 53; Harris Chemical Co. v. Tunnell & Co., 261 Pa. 72, 79; Nimlet's Est., 299 Pa. 359. Carpentry in its literal sense or dictionary meaning would not include excavation, nor would it by its most liberal construction as a word used in the sense of mere manual acts alone; but the thing insured was the work necessary to be performed under the particular carpentry contract. The insurance contract was intended to cover all that was necessary, incidental or implied in the business of "carpentry." For illustration: In the work of repairing a shingled roof, which is a kind of carpentry, a ladder is placed against the house. The placing of the ladder is not in its literal sense the work of a carpenter, nor would the ascending the ladder be

carpentry, yet it could scarcely be contended that if one received an injury in the course of this work, that it would not be in the course of carpentry. On the other hand, if one was engaged to do the carpentry work on a house, no one would contend that his engagement included digging the foundation or building the walls. The contract of insurance must be interpreted in the light of the subject dealt with. The words employed reach out to bring within them the ordinary and incidental objects intended to be covered by the work that is insured. They should be considered in the light of the nature of the particular work of carpentry under which the assured was acting, and whether the thing done was a necessary part of that work. If the provisions of the policy are susceptible of more than one interpretation, that one should be adopted which is favorable to the insured: McKeesport Machine Co. v. Ben Franklin Ins. Co., supra; Bingell v. Royal Ins. Co., Ltd., supra. We need not mention the fact that defendant thoroughly understood the character of the work De Baccias was doing before it placed the insurance. Apart from this, in view of the averment in the statement that the excavation was necessary and incidental to the work of carpentry, the court below should not have allowed the summary judgment when this statement of fact was disputed, as it must be in this case.

If the floor was so close to the ground that it was necessary for earth to be removed, not only to replace the floor in the new position, but to give sufficient air space to preserve properly the floor from decay when completed, such work was a necessary part of the carpentry contract undertaken and implied from the nature of the work itself. If, however, De Baccias undertook to excavate for a cellar, going beyond the implied limitation in the policy,—that is, what was necessary and incidental, —a different question would arise.

We stated in Malley v. American Indemnity Co., 297 Pa. 216, 224, "When an insurance company......is no-

tified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy. The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case. ...... With a little diligence and within a brief time, the carrier could have procured the exact knowledge on which it now relies, and in most cases may similarly prepare a defense. ...... With these facts before it, had they been deemed sufficient, it could have declined to defend the case." In deciding which course it should pursue, it could easily have ascertained the character of work defendant was engaged in, and if it decided it was not liable, it could have acted accordingly, but it cannot delay its decision and refrain from giving notice to the insured until such time has elapsed that his rights in relation to the accident are prejudiced or may become so. Here the insurance company waited more than six months. Five months after the accident plaintiff was examined by a physician of the insurance company to ascertain the extent of her injuries, thus indicating an intent on the part of the company to contest the claim. It is now too late to assert nonliability under a contract of this character. The case of Malley v. American Indemnity Co., supra, applies.

Judgment is reversed with a procedendo.