426 A.2d 164

Gloria BRUGNOLI, t/a Gloria's Lounge

v.

UNITED NATIONAL INSURANCE COMPANY, a corporation, Appellant.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Feb. 27, 1981.

Paul J. Senesky, Philadelphia, for appellant.

J. Kerrington Lewis, Pittsburgh, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in holding it liable for appellee's costs in settling a lawsuit against her. We agree and, accordingly, reverse the judgment of the lower court.

In April of 1969, appellee, Gloria Brugnoli, owned and operated Gloria's Lounge, a restaurant and bar which was licensed to sell intoxicating beverages. At that time Gloria's Lounge was insured by a policy issued by appellant, United National Insurance Company (United). The policy provided for indemnification for liability arising from the conduct of the business, with bodily injury limits of $5,000 per person and $10,000 per occurrence. Expressly excluded from coverage was liability for injuries resulting from "the selling, serving or giving of any alcoholic beverage . . . to a person under the influence of alcohol." The policy further provided

that United would investigate and defend any lawsuit arising out of the operation of the business, within policy coverage.

On April 19, 1969, Glen C. Cantrell fatally shot George A. Silvus in Gloria's Lounge.[1]  One year later, on April 17, 1970, the estate of Silvus instituted suit against Brugnoli in the Court of Common Pleas of Westmoreland County by means of a writ of summons.  Brugnoli took the writ to her personal attorney, Thomas R. Ceraso, who entered his appearance and then sent the writ to United.  United engaged Robert Hassinger, an independent adjuster, to conduct an investigation into the incident.  Sometime in May, 1970, Hassinger contacted Ceraso and requested that Brugnoli execute an agreement providing that United, by its participation in the investigation and defense of the Silvus action, was not waiving its right to later disclaim any obligations for claims not covered by the insurance policy.  Ceraso refused to allow Brugnoli to sign such an agreement.  Subsequently, in early August, 1970, the Silvus estate filed its complaint against Brugnoli.  The complaint alleged liability for Silvus' death on the grounds of service of alcoholic beverages to an intoxicated person (Cantrell) and general negligence.  Ceraso again entered his appearance, and he then sent a copy of the complaint to Hassinger, who in turn forwarded it to United along with a letter stating his belief that service of alcoholic beverages to Cantrell was the only possible basis of liability.[2]  On August 11, 1970, general counsel for United sent a letter to Ceraso, the text of which is as follows:

> This is to advise you that we are the general counsel for United National Insurance Company and Mr. Hassinger has forwarded to us the material you sent to him on August 4, 1970.  Our examination of the Complaint indi-

1.  Cantrell was subsequently convicted of murder in connection with the incident.

2.  Ceraso concurred in this appraisal of the case on the basis of his own investigation, and he later advised Brugnoli that any jury verdict against her would not be covered by her insurance policy with United.

cates the possibility of liability unrelated to the service of intoxicating liquors. Because of this possibility, we are prepared to take over the defense of the matter and our claims department is presently arranging to do just that.

However, we would like to point out as a matter of courtesy and fairness at this point that your client did not have "Liquor Liability" coverage and consequently if the ultimate liability, if any there be, turns out to be predicated upon the negligent or improper furnishing of intoxicating beverages by the defendant to any person or persons, then the policy in question would not cover the judgment and our client, United National Insurance Company, would be forced to disclaim.

However, until such time, we certainly intend to make a vigorous investigation and give a complete defense.

You will hear directly from the company or Mr. Hassinger as to the attorney designated to represent the defense.

If there is any question in connection with this please do not hesitate to communicate with me.

Within several days United notified Ceraso that it had retained Robert A. Cohen, a Pittsburgh attorney, to defend the Silvus action. Cohen arranged with Ceraso to have his appearance entered and reminded Ceraso of the limitations of United's coverage. Cohen and Ceraso subsequently agreed that Ceraso would be the lead attorney in the defense and would conduct the trial if one were held. Cohen was to appear at trial to assist Ceraso, but it was agreed that he would not sit at counsel table.

Between August, 1970, and May, 1973, Ceraso and Cohen communicated sporadically concerning the Silvus action. The case was scheduled and rescheduled for trial on several occasions during this interval. On May 7, 1973, Ceraso concluded negotiations with the Silvus estate to settle the case for $3,000. It should be emphasized that Ceraso had undertaken these negotiations without consulting United; neither Cohen nor anyone else representing United partici-

pated in, or was aware of, the settlement talks.[3]   Although Brugnoli subsequently disputed the settlement, she ultimately paid it and sought reimbursement from United.   United refused, and Brugnoli then brought this action to recover the cost of settlement.   Following a jury trial, both sides moved for a directed verdict.   The lower court granted Brugnoli's motion and thereafter entered judgment for her in the amount of $3,485.85.   This appeal followed.

The lower court based its decision in part on the ground that United was estopped from denying coverage by its continued participation in the defense of the Silvus action despite its belief that any liability assessed to Brugnoli would not be covered by the policy.   We must reject this conclusion for several reasons.   We note initially that an insurer's "obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy."   *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321 (1963) (emphasis in original).   *See also Seabord Industries, Inc. v. Monaco*, 258 Pa.Super. 170, 178, 392 A.2d 738, 742 (1978).   "Thus, if there are two separate causes of action and one would constitute a claim within the scope of the policy's coverage, the insurer has a duty to defend until it can confine the claim to a recovery excluded from the scope of the policy."   *Id.*, 258 Pa.Super. at 179, 392 A.2d at 743 (citing cases).   Notwithstanding the duty of the insurer to defend in a case such as this,

> it is the general rule that an insurance company may not undertake the defense of a suit which entails the defendant's relinquishing to the company the management of the case and then turn around and deny liability under its policy.   As stated in *Basoco v. Just*, 154 Pa.Super. 294, 297, 35 A.2d 564, 565 (1944), "When [the insurance company] substitute[s] itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and

3.   In fact, it appears from the record that United was first notified of the settlement in a letter from Ceraso dated March 25, 1976.

debt of the company to the assured." See *Lewis v. Fidelity & Casualty Co.*, 304 Pa. 503, 156 A. 73 (1931); *Malley v. American Indemnity Corp.*, 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322 (1929).

*Jones v. Robbins*, 258 F.Supp. 585, 588 (E.D.Pa.1966), *aff'd per curiam*, 374 F.2d 1002 (3d Cir. 1967). *See also Perkoski v. Wilson*, 371 Pa. 553, 92 A.2d 189 (1952); *Cohen Appeal (Schmittinger v. Grogan)*, 182 Pa.Super. 399, 128 A.2d 114 (1956); *Goulding v. Sands*, 355 F.2d 230 (3d Cir. 1966); *New Amsterdam Casualty Co. v. Kelly*, 57 F.Supp. 209 (E.D.Pa. 1944). *See generally* Annot., 38 A.L.R.2d 1148 (1954).

The inapplicability of the doctrine of estoppel in the present case becomes manifest upon examination of the conduct of United. The facts clearly show that United did not require Brugnoli to "relinquish[ ] to the company management of the case." *Jones v. Robbins, supra* at 588. Rather, United's participation in the defense of the Silvus action was undertaken on a cooperative basis with Brugnoli's private counsel, Ceraso. That this was so is shown by the trial arrangements to which Cohen and Ceraso agreed, as well as the limited consultation between the two attorneys.[4] Thus, this is not a case in which the insurance company "substituted itself and its judgment for that of the defendant," *Basoco v. Just*, 154 Pa.Super. 294, 297, 35 A.2d 564, 565 (1944), only to later disclaim liability under the policy.[5]

---

4. Indeed, it appears that United played a subsidiary role in defending the Silvus action, as is evidenced by Cohen's total lack of involvement in or knowledge of the negotiations resulting in the settlement of the case.

5. As a corollary of United's cooperative, rather than controlling, participation in the Silvus defense, it is evident that Brugnoli did not rely on United's conduct to her detriment. "[I]t is an essential element of estoppel that the person invoking it has been influenced by or has relied upon the representation or conduct of the person sought to be estopped." *Laroche v. Farm Bureau Mutual Automobile Insurance Co.*, 335 Pa. 478, 484, 7 A.2d 361, 363 (1939). *See also Insurance Company of North America v. McCleave*, 462 F.2d 587, 588 (3d Cir. 1972) (insurer not estopped from denying coverage by its undertaking defense of insured where insured did not rely to its detriment on conduct of insurer).

518

An additional factor militating against a finding of estoppel is the letter of August 11, 1970, which general counsel for United sent to Ceraso in which United reserved its rights under the policy. Brugnoli made no objection to this reservation of rights, and thereafter accepted United's assistance in her defense. It is generally recognized that

[a] liability insurer will not be estopped to set up the defense that the insured's loss was not covered by the insurance policy, notwithstanding the insurer's participation in the defense of an action against the insured, if the insurer gives timely notice to the insured that it has not waived the benefit of its defense under the policy. However, a reservation of rights in this respect, to be effective, must be communicated to the insured. It must fairly inform the insured of the insurer's position and must be timely, although delay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense.

14 G. Couch, *Cyclopedia of Insurance Law* § 51:83 (2d ed. 1965) (footnotes omitted). *Accord, Perkoski v. Wilson,* supra; *Laroche v. Farm Bureau Mutual Automobile Insurance Co.,* 335 Pa. 478, 7 A.2d 361 (1939); *Orcutt v. Erie Indemnity Co.,* 114 Pa.Super. 493, 174 A. 625 (1934). *See generally* Annot., 38 A.L.R.2d 1148 (1954). United's letter of August 11 was a straightforward, unambiguous statement acknowledging its obligations under the policy, yet at the same time reserving its right to disclaim coverage for any liability outside the scope of the policy. Since the potential that Brugnoli would incur liability covered by the policy existed up until the settlement, United could do no more than reserve its right to disclaim. Similar letters, coupled with insureds' acquiescence, have been held sufficient to reserve the rights of insurers to disclaim policy coverage. *See, e. g., Duke v. Hoch,* 468 F.2d 973 (5th Cir. 1972) (applying Florida law); *Johnson v. Universal Underwriters, Inc.,* 283 F.2d 316 (7th Cir. 1960) (applying Kentucky law); *Ancateau v. Commercial Casualty Insurance Co.,* 318 Ill.App. 553, 48 N.E.2d 440 (1943); *United States Casualty Co. v. Home Insurance*

*Co.,* 79 N.J.Super. 493, 192 A.2d 169 (App.Div.1963). *See generally* Annot., 38 A.L.R.2d 1148, § 9 (1954).[6] Moreover, United's letter was timely (mailed within one week of its receipt of the Silvus complaint) and unquestionably sufficient to communicate its reservation of rights to Brugnoli, having been sent to her private attorney. Thus, we hold that the lower court erred in concluding that United was estopped by its conduct from denying coverage for the settlement costs.

■ The lower court based its decision additionally on the ground that United was a party to the settlement between Brugnoli and the Silvus estate. The court opined that "[t]he fact that settlement negotiations and final settlement was [*sic*] handled by Ceraso, in view of the working relationship established between Cohen and Ceraso, does not, under the circumstances of this case, eliminate United as a party to the settlement." Opinion of the lower court at 8. We disagree. The "working relationship" to which the lower court adverted was in fact simply the agreement that Ceraso would conduct the defense for Brugnoli at any trial in the Silvus action. There was little other communication between the attorneys, aside from Cohen's periodic telephone calls to Ceraso for status reports. United played no role in negotiating the settlement and was not consulted by Brugnoli or Ceraso before the settlement was concluded. In the only discussion between Cohen and Ceraso on the subject of settlement, conducted sometime before the settlement was reached, Cohen indicated that United would be willing to contribute only to what he termed the "nuisance value" of a settlement with the Silvus estate. Moreover, Ceraso himself testified that Brugnoli understood when she agreed to the

**6.** As previously noted, Brugnoli did not execute the nonwaiver agreement tendered by United through Hassinger. In view of United's subsequent clear notice of reservation of its rights, however, we consider the absence of an executed nonwaiver agreement to be without significance. *But see* 14 G. Couch, *Cyclopedia of Insurance Law* § 51:84 (2d ed. 1965) (citing cases holding that "consent of the insured is necessary if the insurer is to retain control of defense of the action and at the same time reserve the right to disclaim liability under the policy.").

settlement that she would have to pay it herself and that United would make no contribution. Under these circumstances, we are unable to conclude that United was a party to, or otherwise ratified, the settlement. Accordingly, we hold that the lower court erred in directing a verdict for Brugnoli.

Judgment reversed.