CHARTER OAK FIRE INSURANCE COMPANY, Appellant,

v.

SUMITOMO MARINE AND FIRE INSURANCE COMPANY, LTD.

No. 84–3094.

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1984.
Decided Dec. 17, 1984.

Weis, Circuit Judge, filed a concurring and dissenting opinion.

discussion of burden of proof allocation.

John M. Wolford (argued), A. Elizabeth Baldwin, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellant.

John M. McLaughlin (argued), Thomas A. Tupitza, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for appellee.

Before ALDISERT, Chief Judge, and HUNTER, and WEIS, Circuit Judges.

### OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant Charter Oak Fire Insurance Co. ("Charter Oak") appeals the order of the district court entering judgment in favor of appellee Sumitomo Marine and Fire Insurance Co. ("Sumitomo"). Charter Oak, appellant in this case, insured John D. Wodarski and Wodarski Sled and Cycle Shak, and Sumitomo, appellee, insured Yamaha Motor Co. Charter Oak settled a judgment against its insured in a state court action in which Raymond Peterson sued Wodarski and Yamaha for damages resulting from a snowmobile accident. In this diversity case Charter Oak asserts that Sumitomo wrongfully failed to defend it in the action and indemnify it for the amount paid in settlement. The district court conducted a bench trial in the case and entered an order dis-

missing Charter Oak's action on the basis of collateral estoppel.

Peterson sued Wodarski, an authorized dealer in products designed and manufactured by Yamaha, and Yamaha, in the Common Pleas Court of Erie County, Pennsylvania for injuries sustained by him while operating a snowmobile manufactured by Yamaha and sold to him by Wodarski. Peterson asserted both a negligence claim and a strict liability claim, alleging that the snowmobile had a defective throttle mechanism.

Yamaha was insured under a comprehensive general liability policy containing a broad form vendor's endorsement, issued by Sumitomo, and Sumitomo retained counsel and managed Yamaha's defense. Similarly, Charter Oak and its counsel controlled Wodarski's defense. The same counsel represent Sumitomo and Charter Oak in this action. In the state action, counsel for Wodarski answered Peterson's complaint and included New Matter under Pa.R.C.P. 2252(d), joining Yamaha in the nature of a cross-claim for contribution and/or indemnity. In the cross-claim Wodarski asserted that if it was held liable to Peterson by reason of selling a defective snowmobile, then Yamaha was liable to it for all damages, and costs of defense. App. at 402. In this federal court diversity action, Charter Oak again claims reimbursement and indemnity, this time from Sumitomo alone, rather than from Sumitomo through its insured, Yamaha. In addition, Charter Oak asks for damages arising from Sumitomo's failure to defend it in the state court action.[1]

At the conclusion of all testimony in the state court litigation, the court of common pleas directed a verdict for Yamaha against Peterson in the underlying tort action and for Yamaha against Wodarski in the cross-claim for indemnity and defense. After a six-day trial, the jury returned a verdict for Peterson against Wodarski for $250,000.00. Wodarski filed post-trial motions contesting both the jury verdict against it and the dismissal of its cross-claim. After the state court denied the motions, Wodarski appealed, then settled with Peterson and withdrew its appeal.

The record clearly indicates the reasons for the various dispositions in the state court action. The evidence showed that the snowmobile came from Yamaha in an undefective condition and that while it was in Wodarski's possession and control, persons employed by Wodarski took apart the throttle and then improperly reassembled it. The jury's verdict against Wodarski necessarily rested on a finding that the misassembly caused the throttle to stick and that the sticking of the throttle caused the accident, since this was the only theory of liability presented.

The insurance policy between Sumitomo and Yamaha contained a vendor's endorsement which excluded coverage for "(b) bodily injury or property damage arising out of (i) any physical or chemical change in the form of the product made intentionally by the vendor, or (ii) demonstration, installation, servicing or repair operations, except

---

**1.** Appellant makes an initial argument in its brief that "the Pennsylvania Supreme Court definitively ruled that insurance coverage and duty to defend issues cannot be joined to the under lying action, as a cross-claim under Pa.R.C.P. 2252(a)," citing *Stokes v. Loyal Order of Moose Lodge 696*, 502 Pa. 460, 466 A.2d 1341 (1983). Brief at 27. Therefore, claims Charter Oak, it is "entitled to a full determination of its indemnity and defense rights in the instant action," and cannot be barred from relitigating these issues. *Id.* at 19. We find appellant's argument wholly without merit for two reasons. First, the *Stokes* case dealt with joinder of third-party defendants under 2252(a). Wodarski cross-claimed against Yamaha under 2252(d), not 2252(a). Both Yamaha and Wodarski were already parties and no Pennsylvania rule or case law prohibits cross-claims under 2252(d) for indemnity or defense costs. But regardless of whether *Stokes* does or does not apply in this case, Wodarski did cross-claim for indemnity and defense and the record does not show that any party objected to it. On the contrary, the court dismissed the cross-claim on the merits and Wodarski did not pursue its appeal. Charter Oak attempts to persuade us that it cannot be precluded from relitigating its claim since it was unable to join the claim in the state court action. But the record shows not only that it was able to bring the cross-claim, but also that it did bring it.

such operations performed at the vendor's premises in connection with the sale." App. at 20. Charter Oak bases this action for indemnity on the vendor's endorsement, which was available to it during the state trial.

The district court properly dismissed Charter Oak's claim under section (b)(i) of the vendor's endorsement. In its pretrial submissions, Charter Oak *admits* that the injury did not occur during a demonstration, servicing or repair in connection with the sale of the snowmobile. App. at 144. The district court likewise correctly concluded that application of finality of judgments principles precludes appellant from claiming in federal court that it is covered at all under the vendor's endorsement.

■■■ The law has developed the doctrines of collateral estoppel and res judicata in order to "protect ... adversaries from the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). These interests are implicated when, as in this case, nonparties control the litigation in the first action, and then sue in their own right in the second. Litigating nonparties simply are not "strangers to the cause." *Id.* at 154, 99 S.Ct. at 974. Although Sumitomo and Charter Oak were not technically "parties" to the state court action, they did control the litigation. The Supreme Court has stated that "one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record." *Souffront v. Compagnie Des Sucreries*, 217 U.S. 475, 487, 30 S.Ct. 608, 612, 54 L.Ed. 846 (1910).

■■■ Because this is a diversity case, the district court correctly looked to Pennsylvania law in applying finality of judgment principles. The court did not, however, identify the correct theory of preclu-

sion. Under Pennsylvania law, Charter Oak is barred from bringing the action for indemnity by virtue of res judicata, not collateral estoppel. The Supreme Court of Pennsylvania, in *Williams v. Lumbermen's Ins. Co. of Philadelphia*, 332 Pa. 1, 5–6, 1 A.2d 658, 660–61 (1938), held that one who controls or substantially participates in the presentation on behalf of a party is bound by the judgment in that action and is barred from bringing another action upon the same claim. *See also Estate of Flinn*, 479 Pa. 312, 322, 388 A.2d 672, 677 (1978) (citing *Lumbermen's* for proposition that "one not a party to litigation may be bound by it if he openly and actively, with notice to adverse party, assumes and manages the litigation.").

■■■ Charter Oak controlled the litigation in the state court and asserted the same claim for indemnity in its cross-claim against Yamaha as it asserts here. In defining the "cause of action" for purposes of preclusion under res judicata, the fact that the state court cross-claim may, as characterized by Judge Weis, have asked for relief under a common law theory of indemnity and duty to defend, while the suit in federal court sought relief based upon a contractual theory, is irrelevant. The conduct complained of is the same in both cases; failure to indemnify and pay costs of defense. The "plaintiff is not entitled to another day in court if he merely proposes a different theory of recovery based upon the same 'liability creating conduct' of the defendant which gave rise to the first action." *Ley v. Boron Oil Co.*, 454 F.Supp. 448, 450 (W.D.Pa.1978). *Accord, Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 470 (3d Cir. 1950), *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951); *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978); *Seamon v. Bell Telephone Co. of Pa.*, 576 F.Supp. 1458, 1460 (W.D.Pa.1983). *See also* 1B J. Moore, *Moore's Federal Practice* ¶ 0.410.1 (2nd ed. 1984).

At the commencement of the state court trial, Charter Oak had been in possession of the insurance policy and vendor's en-

dorsement for at least two months. It cannot escape the effect of res judicata simply by failing to introduce any evidence based on the contractual theory. We agree with the district court in the *Ley* case which stated, "[i]n determining whether two cases involve the same cause of action, a basic concern is whether the plaintiff had a 'reasonable opportunity' to advance in his first day in court those claims or theories of recovery which he advances in his second." *Ley*, 454 F.Supp. at 450. Here, Charter Oak certainly had the opportunity. Moreover, Charter Oak's participation in the state court litigation clearly rose to the level of control necessary to apply preclusion rules. *See, e.g., Ransburg Corp. v. Automatic Finishing Systems, Inc.*, 412 F.Supp. 1357, 1363–64 (E.D.Pa.1976) (where "the non-party actively and avowedly conducts the defense, manages and directs the progress of the trial at its expense and under its supervision, the outcome, which if favorable would have redounded to his benefit, if adverse becomes sauce for the goose and gander alike, and binding under principles of *res judicata.*"). Application of the *Lumbermen's* principle here results in an absolute bar to Charter Oak bringing the action for indemnity in federal court.

Both parties to this appeal, as well as the district court, addressed the application of collateral estoppel to specific issues litigated in the state court action. Perhaps they were misled by federal common law in this area. The Supreme Court of the United States, in *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979), stated that preclusion of nonparties who control litigation "falls under the rubric of collateral estoppel rather than res judicata because the latter doctrine presupposes identity between causes of action. And the cause of action which a nonparty has vicariously asserted differs by definition from that which he subsequently seeks to litigate in his own right." *Accord* Restatement (Second) of Judgments § 39 (1980). But while the courts label what they are doing collateral estoppel, they frame the "issue" which is to be precluded so broadly as to make issue preclusion in this context virtually indistinguishable from res judicata.[2] Thus, the result under federal common law is in effect the same result as under Pennsylvania's more straightforward application of res judicata. We approve the Pennsylvania approach and believe that the principles behind claim preclusion justify its application in this case, where the insurance company litigated the case in the state court and now seeks another chance in federal court.

■ Charter Oak also claims that Sumitomo wrongfully failed to defend it in the state court action. We find the failure to defend claim barred by res judicata under the same reasoning as we set out above. In the state court action, Wodarski asked for "costs of defense." Whether the theory relied on was contractual and based on the insurance policy and vendor's endorsement, or based on principles of common law indemnity, is irrelevant. Plaintiffs in this action should not be given another chance to litigate issues "which they have already litigated or had a reasonable opportunity to litigate." *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464,

---

**2.** Professor Moore, trying to justify an expansive definition of "issue" in this area, observes:

> A new contention is not ... necessarily a new issue. If a new legal theory or factual assertion put forward in the second action is "related to the subject-matter and relevant to the issues" that were litigated and adjudicated previously, "so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." The analogy to the rule against splitting a single cause of action is striking. Like a cause of action, "an issue may not be ... split into pieces. If it has

> been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result." Any contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue, then, is subsumed in that issue and precluded by the prior judgment's collateral estoppel effect [footnotes omitted].

1B Moore's Federal Practice ¶ 0.443[2], at 760. *See also Ransburg v. Automatic Finishing Systems, Inc.*, 412 F.Supp. 1357, 1365 n. 13 (E.D.Pa. 1976).

469 (3d Cir.1950). Here, as in the *Williamson* case, the "only thing that is different is the theory of recovery." *Id.* at 470. Charter Oak's claim for damages for breach of duty to defend, therefore, is the same claim, for purposes of res judicata, as Wodarski made in the state court action under the name of "defense costs."

■ But even if res judicata did not bar it, we would affirm the district court's dismissal of the duty-to-defend claim on the ground that Sumitomo had no duty to defend. The insurance policy in this case contains two clauses which, when read together, impose a "duty to defend" in "any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations are groundless, false or fraudulent." App. at 43. Wodarski became an "insured" by virtue of the vendor's endorsement, app. at 47, but only to the limited extent of the endorsement. Appellant argues that Sumitomo had a duty to defend Wodarski regardless of the merits of Peterson's claim against Wodarski or the facts potentially excluding the claim from coverage. It is true that, according to the Supreme Court of Pennsylvania, the "obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." *Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 58, 188 A.2d 320, 321 (1963); *Brugnoli v. United National Ins. Co.,* 284 Pa.Super. 511, 516, 426 A.2d 164, 166 (1981). But it is also true that under Pennsylvania law the insurer need only defend "until it can confine the claim to a recovery excluded from the scope of the policy." *Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 176, 392 A.2d 738, 743 (1978); *Brugnoli v. United Nat. Ins. Co.,* 284 Pa.Super. 511, 516, 426 A.2d 164, 166 (1981). *See also Pittsburgh Plate Glass Co. v. Fidelity and Cas. Co. of N.Y.,* 281 F.2d 538, 540 (3d Cir.1960).

■ In this case, Wodarski did not demand defense from Sumitomo until March 26, 1980, almost three years after the state suit commenced. App. at 416. By that time Peterson had filed its pre-trial narrative statement which clarified the issues for trial to the point where it was clear that the claim to be tried fell outside the coverage of the insurance policy. In the pre-trial narrative Peterson stated that the "throttle mechanism [of the snowmobile] had been improperly assembled by the defendant Wodarski and it was the improper assembly which caused the throttle mechanism to stick." App. at 21. Since the vendor's endorsement excluded coverage when there was an intentional change in the physical form of the snowmobile by the vendor, Sumitomo properly concluded that the claim was not covered and it had no duty to defend. Indeed, less than two months after Wodarski's demand for defense, the trial court dismissed the claim against Yamaha by Peterson and the cross-claim by Wodarski for indemnity and costs of defense.

Under principles of finality and fairness the district court acted properly in precluding Charter Oak from litigating this case. The judgment of the district court will be affirmed.

WEIS, Circuit Judge, concurring and dissenting.

Two separate and distinct issues are presented here. The first is Charter Oak's claim for indemnification, and the second is its claim for reimbursement of the costs of defense.

I. *Indemnification*

At the outset, it is necessary to clarify one major difference between my analysis and that adopted by my colleagues. The majority maintains that "Charter Oak controlled the litigation in state court and asserted *the same claim for indemnity* in its cross-claim against Yamaha as it asserts here." Maj. op. at 270. I am convinced that these claims are not the same.

The cross-claim against Yamaha was grounded on the common law rights of indemnification and contribution among joint tortfeasors. That dispute was resolved in state court. It is, however, a

claim distinct from that now presented in the federal court—a contractual obligation to indemnify and defend grounded in the Sumitomo insurance policy itself.

Because I find these to be distinct claims, I follow a different route but nevertheless reach the same result on the indemnification issue. As to the costs of defense issue, my analysis leads me to disagree.

Rather than invoke the often amorphous res judicata doctrine, it seems to me that the court should rely on collateral estoppel, or more precisely, issue preclusion. "Res judicata" in its broadest sense describes the various ways in which a prior judgment ¢an have a preclusive effect on subsequent litigation. Used generically, it may include both "claim preclusion" and "issue preclusion." *See* C. WRIGHT, LAW OF THE FEDERAL COURTS § 100A (4th ed. 1983). The prior judgment in this case was handed down by a Pennsylvania court, and, in extending full faith and credit, we give the same effect to that judgment as would the state courts. *Migra v. Warren City School District Board of Education,* —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Public Service Mutual Ins. Co. v. Cohen,* 616 F.2d 704 (3d Cir.1980).

Pennsylvania requires the concurrence of four elements to establish res judicata. There must be an identity of:

(1) The things sued upon;

(2) The cause of action;

(3) The persons and parties to the action;

(4) The quality or capacity of the parties.

*Stevenson v. Silverman,* 417 Pa. 187, 190, 208 A.2d 786, 787–88 (1965). The "cause of action" test has often been the turning point on whether strict res judicata or claim preclusion should be applied, and so it is here. 

In the Peterson state court action, Wodarski's crossclaim against Yamaha was based on a primary-secondary tort liability relationship. Wodarski contended that as vendor he was a mere conduit, and that ultimate liability for the defective product rested with Yamaha, the manufacturer. *See Sochanski v. Sears, Roebuck & Co.,* 689 F.2d 45 (3d Cir.1982); *Burbage v. Boiler Engineering & Supply Co.,* 433 Pa. 319, 249 A.2d 563 (1969); *Burch v. Sears, Roebuck & Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983); *Mixter v. Mack Trucks, Inc.,* 244 Pa.Super. 313, 308 A.2d 139 (1973). That is a substantially different claim from the one Charter Oak, as subrogee of Wodarski, is asserting against Sumitomo here. The federal court action is purely contractual, and rests on the terms of the vendor's endorsement contained in the insurance policy issued by Sumitomo.

That we are confronted with separate causes of action may be illustrated by a scenario in which Wodarski would be denied complete indemnity from Yamaha because his separate negligence contributed to Peterson's injury together with Yamaha's defective product. *See Burch v. Sears, Roebuck;* RESTATEMENT OF RESTITUTION § 93 comment d and § 95 (1937). In that event, however, it is entirely possible that Wodarski would still be entitled to indemnification under the Sumitomo insurance policy.

Strict res judicata or claim preclusion, therefore, cannot be applied to the insurance coverage question. Nevertheless, certain facts necessary to the Peterson judgment were adjudicated in state court, and they have a determinative effect on Wodarski's (and its subrogee Charter Oak's) claim for indemnity under the vendor's endorsement. Included in this category are matters such as whether Wodarski intentionally modified the snowmobile's throttle mechanism. Because Wodarski and Charter actively contested this issue in the state court, they are bound by the adverse decision there. This results not from res judicata, or claim preclusion, but rather from collateral estoppel, more specifically, issue preclusion.

The Pennsylvania Superior Court, summarizing the differences between res judicata and collateral estoppel, noted that the requirements for the latter were (1) that the issue of fact be the same in both suits,

even though the cause of action was not identical, and (2) that the party against whom the defense is invoked is identical to or in privity to the party in the first action. *Thompson v. Karastan Rug Mills,* 228 Pa. Super. 260, 265, 323 A.2d 341, 344 (1974). *See also Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

Because the causes of action in the state and federal courts here were different, collateral estoppel—issue preclusion, rather than res judicata—claim preclusion, provides the correct rationale. Nevertheless, Sumitomo is not required to indemnify Wodarski or Charter Oak in any event because the facts adjudicated in state court establish that no coverage is owed under the vendor's endorsement.

## II. *Duty to Defend*

The second issue is whether the insurance policy required Sumitomo to defend Wodarski in the state court action. That question was not litigated in the state court, nor were determinative facts adjudicated there.

It is well settled in Pennsylvania that a carrier's duty to defend its insured, putative or otherwise, is governed by different principles than those that control the policy obligation to indemnify. *Gedeon v. State Farm Mutual Automobile Ins. Co.,* 410 Pa. 55, 188 A.2d 320 (1963). The insurer's duty to defend is triggered by the allegations in the personal injury or property damage complaint. When the facts set out in the pleading could come within the policy coverage, the duty to defend arises. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959). The insurance company is not relieved of its defense obligation until the lawsuit is confined to a claim that the policy does not cover. *Id.* at 590, 152 A.2d at 489; *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750 (2d Cir.1949); *see also Pittsburgh Plate Glass Co. v. Fidelity & Casualty Company of New York,* 281 F.2d 538 (3d Cir.1960).

The majority concludes that res judicata applies to the duty to defend claim because

in state court Wodarski filed a cross-claim against Yamaha asking for "costs of defense." The cross-claim was pleaded in accordance with Pennsylvania Rules of Civil Procedure 2252(d), which permits one defendant to assert claims against a co-defendant on the ground that the latter is solely liable to the plaintiff or liable for contribution or indemnity to the "joining party."

In support of its position, the majority finds a difference between the cross-claim procedures of 2252(d) and the procedure for joining third party claims under 2252(a). Such a distinction, however, does not exist. After setting forth a procedure for pleading claims against co-defendants in the answer under the heading "New Matter", Pennsylvania Rule 2252(d) states

"The case shall proceed thereafter as if such party (co-defendant) had been joined by a writ or complaint."

The quoted sentence makes the point that the procedure specified in subsection (d) is designed to eliminate the circuitous steps of severance of the co-defendant and service with a complaint to join additional defendant, the practice which prevailed under former rules. Thus, subsection (d) does no more than eliminate redundant pleadings which were necessary before subsection (d) was promulgated. *See* GOODRICH–AMRAM SECOND, § 2252 (d):1 (1977).

The rule does not change existing law as to the substantive matters which may be asserted or adjudicated in additional defendant proceedings. In short, under Pennsylvania procedure it makes no difference whether an indemnity claim is asserted against a non-party via Rule 2252(a) or someone already a party through Rule 2252(d).

Res judicata cannot preclude the duty of defense claim asserted against Sumitomo in the federal court. That company was never made a party to the state court action, and thus the breach of contract claim asserted against it here was not litigated there. Nor could it have been.

The Pennsylvania Supreme Court held in *Stokes v. Loyal Order of Moose Lodge # 696*, 502 Pa. 460, 466 A.2d 1341 (1983), that a defendant's claim for insurance coverage may not be litigated by way of additional defendant proceedings in the tort suit brought by a personal injury plaintiff. The court observed that the evidence to establish an insurance company's obligation is distinct from that which the personal injury plaintiff would present to establish liability against a putative insured. The proper way to resolve the coverage issue, said the court, is by a separate suit. In the case at hand, therefore, Wodarski was not able to join the Sumitomo Insurance Company as additional defendant in the Peterson state court suit.

The cross-claim that Wodarski filed against Yamaha asked for "indemnity or reimbursement against the manufacturer for any and all such liability including costs of defense." As noted earlier, that common law claim was based on the relationship of manufacturer-retailer. The demand on Yamaha for the cost of defense was based on that premise, not the separate duty to defend set out by the terms of Sumitomo's policy. The insurance carrier's duty to defend is separate from any primary-secondary liability relationship between Yamaha and Wodarski.

Pennsylvania law recognizes a cause of action for a claim for reimbursement such as that of Wodarski against Yamaha. In *Boiler Engineering and Supply Co. v. General Controls, Inc.*, 443 Pa. 44, 277 A.2d 812 (1971), the Pennsylvania Supreme Court held that one secondarily liable could recover "defense costs," including counsel fees for trial and appeal, from the primary tortfeasor. This holding was consistent with the earlier case of *Orth v. Consumers Gas Co.*, 280 Pa. 118, 124 A. 296 (1924), where a property owner, only secondarily liable, recovered counsel fees, costs of printing appellate briefs, and other expenses from a gas company which was primarily responsible for personal injuries to a pedestrian.

Unquestionably under Pennsylvania law, a person may be entitled to costs of defense from more than one source, and the majority errs in failing to distinguish between the two causes of action—common law and insurance policy—available in this case.

The state court judgment resolved only the primary-secondary tort liability issue and Yamaha's obligation to pay for Wodarski's defense on that basis. Sumitomo's duty to defend was neither presented nor decided in state court. *See Haize v. Hanover Ins. Co.*, 536 F.2d 576 (3d Cir.1976). That question remains open and should be decided in the first instance by the district court.

The facts established in state court, although material to a right of indemnity under the vendor's endorsement, do not resolve the contractual duty to defend issue. *Gedeon v. State Farm Insurance* makes clear that under Pennsylvania law a carrier may have a duty to defend an individual even though ultimately it is determined that no right of indemnity exists under the policy.

Since the district court in the case at hand did not rule separately on the duty to defend issue, I would remand for further proceedings to determine that matter. The point at which it became clear that the claims made against Wodarski were outside the policy remains open. The majority concludes that upon the filing of the plaintiff's pretrial statement in state court "it was clear that the claim to be tried fell outside policy coverage." I have some doubt on this point, but it should be decided in the first instance by the district court on remand. Even accepting the majority's conclusion, an allowance for the three year period preceding pretrial is still at issue.

The majority asserts that the delay in demanding a defense from Sumitomo precludes any recovery for costs of defense. Under Pennsylvania law, however, delay is irrelevant when the carrier can show no resulting prejudice. *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193

(1977). Sumitomo suffered no prejudice here.

I would remand to the district court to resolve the cost of defense issue.