## United States Fidelity & Guaranty Co. v. Robert L. Goodall, Inc.

*Daniel K. Deardorff,* for plaintiff.
*Robert E. Yetter,* for defendant Robert L. Goodall.
*Richard C. Angino,* for defendant Kevin J. Ernst.
*F. Lee Shipman,* for defendant Fox Pool Corporation.

BAYLEY, *J.,* February 18, 1985—On May 26, 1983, a personal injury action was commenced in Dauphin County at 2045-S-1983 by Kevin J. Ernst against various defendants. Ernst allegedly suffered serious injuries on July 23, 1981, while diving into a swimming pool. Robert L. Goodall, Inc. was joined as an additional defendant pursuant to a writ filed on July 22, 1983 and complaint filed on August 11, 1983. A praecipe for an appearance was entered by counsel on behalf of Robert L. Goodall, Inc. on September 7, 1983 with an answer and new matter being filed on November 29, 1983.

Kevin, J. Ernst also instituted a second lawsuit in Dauphin County at no. 2349S 1983. Robert L. Goodall, Inc. was joined as an additional defendant pursuant to a praecipe for a writ filed on July 22, 1983 with a complaint being filed on August 11, 1983. An appearance was entered on behalf of Robert L. Goodall, Inc. in this second suit and an answer with new matter was filed on November 15, 1984.

The Dauphin County Court has since transferred venue on both cases to Northumberland County;

however, this order is on appeal to the Superior Court of Pennsylvania. Plaintiff, United States Fidelity and Guaranty Company, hereinafter referred to as USF&G, instituted this action for a declaratory judgment on July 19, 1984. All of defendants captioned in this case, except Robert Goodall, t/a Robert Goodall Pools, are parties in the two Dauphin County personal injury actions except Geisinger Medical Center and Fred G. McMurry, M.D. who are defendants only at no. 2045S 1983.

Robert L. Goodall, currently of New Cumberland, Cumberland County, Pa., started to sell swimming pools in this area in 1963. In 1966 he incorporated into Robert L. Goodall Co., Inc. Mr. Goodall was the sole stockholder and owner of this corporation. Robert L. Goodall Co., Inc. distributed swimming pools and equipment for Fox Pools, Inc. of York, Pa. Fox Pools was the manufacturer of the equipment and Goodall had no interest in that corporation.

The Fox swimming pool in which Kevin J. Ernst was allegedly injured is alleged to have been sold by Robert L. Goodall Co., Inc. to a contractor by the name of Rose who thereafter installed the pool. Robert L. Goodall Co., Inc. ceased distributing Fox Pools in 1972 and thereafter distributed another product until the company went bankrupt on January 14, 1977. The assets of the firm were sold as a result of this bankruptcy which was administered in the United States District Court for the Middle District of Pennsylvania.

In March of 1977, Robert L. Goodall formed another corporation with Leon Via. The two men were equal owners of this business known as Surf Pools, Inc. They sold swimming pools and products but not Fox Pools. Mr. Goodall sold all of his stock and interest in this business to Mr. Via in 1979, and thereafter commenced operation of another swim-

ming pool business under his own name as a sole proprietorship. This business known as Robert Goodall, Trading and Doing Business as Robert Goodall Pools, is a direct competitor with Surf Pools, Inc. which continues to be operated by Via.

Plaintiff, USF&G, wrote a master insurance policy for Goodall's sole proprietorship. The policy period commenced on September 8, 1979 for a period of a year and was later renewed for another year.

USF&G has searched its records and finds no evidence of ever having written any policy for Goodall individually or a company which Goodall had an interest in or operated prior to its master policy commencing on September 8, 1979. Goodall himself testified that he believes that Robert L. Goodall Co., Inc. had liability insurance but he does not remember the company nor has any records to indicate what company it was. He testified that when he and Via started Surf Pools, Inc. they obtained a new insurance agent. When he started his sole proprietorship in 1979 he went to USF&G. This business is still in operation and he has since changed his coverage to another carrier.

I find as a fact that USF&G's first policy with Goodall or a Goodall business was the master policy written for Robert Goodall, trading as Robert Goodall Pools effective September 8, 1979. We must now determine whether USF&G has a duty to provide insurance coverage and defend or indemnify the named defendant, Robert L. Goodall, Inc., for the claims made against it in the actions at nos. 2045-S-1983 and 2349-S-1983 in Dauphin County.[1] Robert L. Goodall, Inc. has not entered an ap-

---

1. For the distinction between a "claims made" policy and "occurrence" policies see Appalachian Co. v. Liberty Mut. Ins. Co., 676 F.2nd 56 (1982).

pearance in this Cumberland County lawsuit. Kevin J. Ernst and all other defendants in this case, except Robert Goodall, t/a Robert Goodall Pools, oppose USF&G's requested relief.

USF&G agrees that it would provide coverage and defend Robert L. Goodall, t/a Robert Goodall Pools pursuant to the terms of its master insurance policy should Goodall and his sole proprietorship be joined in the Ernst actions. It maintains, contrary to the request of the other parties in that lawsuit, that it need not defend or provide coverage or indemnification for the claims made in those suits against Robert L. Goodall, Inc.

A non-jury trial has been held in this declaratory judgment proceeding and the matter is now ready for decision.

## DISCUSSION

We must initially determine if USF&G has waived its right to deny a defense and liability under its policy to Robert L. Goodall, Inc. in the two Dauphin County actions. In Brugnoli v. United National Insurance Company, 284 Pa. Super. 511, 426 A.2d 164 (1981), a business liability insurer undertook the defense of an action against the owner of a lounge brought by the estate of a patron who was shot therein. The court stated:

"We note initially that an insurer's 'obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy.' Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 58, 188 A.2d 320, 321 (1963). (Emphasis in original.) See also Sebord Industries, Inc. v. Monaco, 258 Pa. Super. 170, 178, 392 A.2d 738, 742 (1978). 'Thus, if there are two separate causes of action and one would constitute a claim within the scope of the policy's

coverage, the insurer has a duty to defend until it can confine the claim to a recovery excluded from the scope of the policy.' Id., 258 Pa.Super. at 179, 392 A.2d at 743 (Citing cases). Notwithstanding the duty of the insurer to defend in a case such as this, it is the general rule that an insurance company may not undertake the defense of a suit which entails the defendant's relinquishing to the company the management of the case and then turn around and deny liability under its policy. As stated in Basoco v. Just, 154 Pa.Super. 294, 297, 35 A.2d 564, 565 (1944), 'When [the insurance company] substitute[s] itself and its judgment for that of the defendant, *both plaintiff and defendant* have a right to insist that the final judgment establishes the liability and debt of the company to the assured.' See Lewis v. Fidelity & Casualty Co., 304 Pa. 503, 156 A. 73 (1931); Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322 (1929). Jones v. Robbins, 258 F.Supp. 585, 588 (E.D.Pa. 1966), aff'd per curiam, 374 F.2d 1002 (3d Cir. 1967). See also Perkoski v. Wilson, 371 Pa. 533 92A.2d 189 (1952); Cohen Appeal (Schmittinger v. Grogan), 182 Pa.Super. 399, 128 A.2d 114 (1956); Goulding v. Sanda, 355 F.2d 230 (3d Cir. 1966); New Amsterdam Casualty Co. v. Kelly, 57 F.Supp. 209 (E.D. Pa. 1944). See generally Annot., 38 A.L.R. 2d 1148 (1954)." (Emphasis added).

The Superior Court reversed a decision by the trial court that had in effect held that the insurance carrier in this case was estopped from withdrawing. The facts showed that the insurance carrier did not require defendant to relinquish to the company management of the case since it undertook participation of the defense in cooperation with the defendant's personal counsel. In addition, within one week of its receipt of the complaint, it notified de-

fendant that it reserved its rights under the policy. Under these circumstances, even though the insurance carrier had participated in settlement negotiations, the Superior Court held that the trial court erred in directing a verdict on the theory of estoppel for the insured to recover the cost of settlement ultimately negotiated by her personal counsel with plaintiff's estate.[2]

We fail to see how the opponents in this action are prejudiced by USF&G's withdrawal from the case. Estoppel requires a showing of prejudice in order to obtain relief. Guardian Life Ins. Co. v. Zerance, 505 Pa. 345, 479 A.2d 949 (1984). While Brugnoli v. United National Insurance Co., supra, holds that when an insurance company substitutes itself and its judgment for that of defendant, both plaintiff and defendant have the right to insist that the final judgment establishes the liability and debt of the company to the assured it is apparent that what the opponents are really looking to is USF&G's possible participation in the payment of any judgment ultimately entered or settlement negotiated in the Dauphin County actions.

Robert L. Goodall, Inc. is bankrupt. The company went out of business in 1977. The Bankruptcy Court has long ago administered the bankrupt's

---

2. The opponents to USF&G's petition for relief also cite Douglas v. Evans, 299 Pa. Super. 232 (1982) as supporting their position. That case, citing the same legal principles as Brugnoli v. United National Insurance Company, supra, sustained a trial court's refusal denying an insurance carrier's withdrawal on facts which are alleged to be close to the facts of this case. We cannot however rely on this case since a per curiam order by the Supreme Court at 502 Pa. 432, 466 A.2d 1030 (1983), reversed the order of the Superior Court noting that the case was settled after a petition for allowance of appeal had been granted.

estate. There is no operational entity today that has objected to USF&G's petition. Nor has Robert L. Goodall objected since USF&G has maintained in this court that it would defend him if he is joined individually in the Dauphin County actions and that it would be liable for any judgment entered against him individaully on a claims made basis. The appearance of prejudice to the insured is certainly the key factor that should prevent an insurance carrier from withdrawing from a case.

While it might have been wise for USF&G to have entered the Dauphin County suits under a reservation of rights, with notification to all parties, and immediately applied for declaratory relief, we simply cannot discern from the record made in this case any prejudice which will occur to those who oppose this petition. No work will have to be redone on the Dauphin County actions since it is obvious that Robert L. Goodall, Inc. will go unrepresented. There is no showing that USF&G has substituted its judgment for that of Robert Goodall, Inc. to the extent that the opponents to this petition are prejudiced. The spector of prejudice raised by them is frivolous.

Next we must determine if this case falls into one of the exceptions to the general rule that when one company sells or transfers all its assets to a successor company, the successor does not acquire the liabilities of the transferor corporation merely because of its succession to the transferor's assets. Husak v. Derkel Incorporated, 234 Pa. Super. 452, 341 A.2d 174 (1975). In support of their position the opponents cite Dawejko v. Jorgensen Steel Co., 290 Pa. Super. 15, 434 A.2d 106 (1981). In this case plaintiff was injured in 1972 when he was struck by sheets of steel which were accidently dropped from a lifting machine called a "Mansaver." The Mansaver was manufactured by Mansaver Indus-

tries, Inc. in 1957 and sold through a broker to Hotpack Corporation, plaintiff's employer. In 1964, Mansaver Industries, Inc. sold its assets to American Chain and Cable Company, also known as ACCO, and subsequently ceased operations. ACCO formed a subdivision called Mansaver Industries, Inc., a division of ACCO. The Superior Court held that plaintiff could recover against ACCO on principles of strict tort liability.

We find that all the exceptions set forth in Dawejko are not applicable to the facts of this case. The standard exceptions to the general rule: (1) that the purchaser expressly or impliedly agrees to assume such obligations; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered to escape liability, are not applicable because there was never a transaction in the present case in which the assets of Robert L. Goodall, Inc. were sold to or merged into the business he is now operating known as Robert Goodall, t/a Robert Goodall Pools.

In the present case the following events took place:

1963: Robert L. Goodall sold pools as an individual;

1966: Robert L. Goodall incorporated into Robert L. Goodall, Inc.;

1966 to 1972: Robert L. Goodall, Inc. distributed Fox Pools which were manufactured by a company in which neither Robert L. Goodall, Inc. nor Robert L. Goodall had any interest;

1977-Jan.: Robert L. Goodall, Inc. went bankrupt. Its assets were sold through the court administration of the bankrupt's estate;

1977-March: Robert L. Goodall and Leon Via formed Surf Pools, Inc. They distributed swimming pools but never Fox Pools;

1979: Robert L. Goodall sold all his stock in Surf Pools, Inc. to Leon Via. Surf Pools, Inc. continues to distribute swimming pools in direct competition with Goodall's new business;

1979: After the sale of his interest in Surf Pools, Inc., Robert L. Goodall commences operation of the sale and distribution of swimming pools under the name Robert Goodall, Trading and Doing Business as Robert Goodall Pools. He is insured by USF&G, which never insured Robert L. Goodall, Inc. This operation has never distributed Fox Pools;

1981, July 23: The plaintiff in the Dauphin County actions is allegedly injured in a Fox Pool which was sold to a contractor by Robert L. Goodall, Inc. during the time that corporation was in business and selling Fox Pools.

The Dawejko decision also notes another exception where a successor company will be strictly liable for the defective product manufactured by the predecessor company. As the court noted:

"Traditionally, a case has been held within the 'continuation' exception only when there is a common identity of officers, directors and stock between the selling and purchasing corporations and only one corporation after the transfer. (Citing cases). However, in some recent decisions, a 'continuation' has been defined more broadly, the emphasis being shifted from corporate formalities to an inquiry regarding the nature of the business operations.

The continuation exception does not apply to the present case because, once again, Robert Goodall, Trading and Doing Business as Robert Goodall Pools, which commenced business in 1979, is not a successor company to Robert L. Goodall, Inc. which

operated between 1966 and 1977. The prior corporation went bankrupt. Its principle formed a new corporation with another individual who now owns all of the stock of that corporation. Goodall then struck out on his own again operating as an individual. Furthermore, the Fox Pools distributed by Robert Goodall, Inc. were never distributed by either Surf Pools or later by Goodall operating individually. Robert Goodall, Trading and Doing Business as Robert Goodall Pools cannot be considered a successor company within the continuation exception on these facts.

Dawejko also sets forth a new exception under Pennsylvania law called the product line exception. The court noted that the purpose of the rule of strict tort liability is to ensure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Thus the court reiterated that the paramount policy to be promoted by the new rule is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them.

In determining whether the product line exception is applicable, the Superior Court held that a court should consider the purposes of the rule so that in any particular case the court may consider whether it is just to impose liability on a successor company. The factors that the court should consider are for example: whether the successor company advertised itself as an ongoing enterprise; whether it maintained the same product, name, personnel, property and clients; whether it acquired the predecessors corporation's name and goodwill, and required the predecessor to dissolve; whether the de-

struction of plaintiff's remedies against the original manufacturer was caused by the successor's acquisition of the business; the successor's ability to assume the original manufacturer's risk spreading rule and the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturers goodwill being enjoyed by the successor in the continued operation of the business.

Once again we do not feel that the facts of the present case fit within this produce line exception. First of all we are not dealing with a manufacturer; rather, Robert L. Goodall, Inc. distributed a Fox Pool manufactured by another company of which he had no interest. While Robert L. Goodall, Inc.'s distribution capacity subjects it to possible liability under a strict liability theory; nevertheless, the same theory is not necessarily as persuasive for creating liability on a successor company under the product line exception set forth in Dawejko. Furthermore, Robert L. Goodall in his capacity with Surf Pools and in his current individual capacity, has never distributed Fox Pools. The cause of the dissolution of Robert L. Goodall, Inc. had nothing to do with Goodall's later association with Surf Pools, Inc. or his current individual business. The demise of Robert L. Goodall, Inc. came in bankruptcy. The opponents ask us to impose liability on Robert L. Goodall, operating individually, merely because he uses the same name as was associated with his prior bankrupt corporation and conceivably generates some continuing good will from his prior corporate activities. However, it is difficult to see how an individual derives good will when his name is associated in the community with a bankrupt company. In addition, there is no evidence that Robert Goodall's current company advertises itself as the successor

to Robert L. Goodall, Inc. The current company certainly did not require that the corporation dissolve and any destruction of Ernst's remedies against the corporation were not caused by Robert Goodall going back into business for himself in 1979. We also question whether it would be just and legal, once a corporation has gone bankrupt, to saddle its owner with personal liability for any defective product sold by the corporation merely because the owner chooses to institute another business of a similar nature. Lastly, in this case, the manfuacturer, Fox Pool Corporation, is a defendant in both of the suits initiated by Ernest.

We are not prepared to judicially extend the product line exception announced in Dawejko v. Jorgensen Steel Co., supra, to a case where the corporation which distributed a swimming pool manufactured by a third party went bankrupt in 1977 and its principle thereafter formed a new corporation to sell swimming pools other than the type of swimming pool in which plaintiff was injured and this corporation remains a competitor to the sole proprietorship that the principle now operates under his own name for the distribution of swimming pools other than the type in which plaintiff was injured.

Finally, the opponent seeks to pierce the corporate veil to establish liability by Robert L. Goodall individually for the acts of his corporation, Robert L. Goodall, Inc. In Pennsylvania there is a presumption against piercing a corporate veil and the party asserting that a corporate veil should be pierced has a difficult burden of proof. Wedner Unemployment Compensation Case, 449 Pa. 460, 296 A.2d 792 (1972). The mere fact that a corporation is owned by one person is clearly an insufficient reason to pierce a corporate veil. Kellytown Co. v. Williams, 284 Pa. Super. 613, 426 A.2d 663 (1981); Brown v.

Gloechner, 383 Pa. 318, 118 A.2d 449 (1955). A corporate veil will not be pierced unless it is shown that the corporation existed to perpetrate a fraud or some other illegality. Kellytown Co. v. Williams, supra. There is absolutely no showing that Robert L. Goodall, Inc. perpetrated any fraud or illegality which would warrant imposing individual liability on its owner, Robert L. Goodall.

## ORDER OF COURT

And now, this February 19, 1985, it is ordered and adjudged that the rights of plaintiff are as follows:

1. United States Fidelity & Guaranty Company has no duty to defend Robert L. Goodall, Inc. in the actions commenced in the Court of Common Pleas in Dauphin County at no. 2045S 1983 and 2349S 1983;

2. United States Fidelity & Guaranty Company has no liability to pay any judments which may be entered against Robert L. Goodall, Inc. in the actions commenced in the Court of Common Pleas in Dauphin County at no. 2045S 1983 and 2349S 1983;

3. United States Fidelity & Guaranty Company, through its counsel may withdraw from its representation of Robert L. Goodall, Inc. in the actions commenced in the Court of Common Pleas in Dauphin County at no. 2045S 1983 and 2349S 1983.