WEST AMERICAN INSURANCE CO.

v.

**Endel LINDEPUU, and South Jersey Assets, Inc., (Successor to Scarborough Corp.).**

No. CIV.A.98–5968.

United States District Court, E.D. Pennsylvania.

Dec. 13, 2000.

Andrew J. Gallogly, Margolis Edelstein, Philadelphia, PA, for West American Ins. Co.

Thomas F. Crawford, Thomas F. Crawford, & Associates, Langhorne, PA, for Endel Lindepuu.

Patrick J. Madden, Damien O. DelDuca, Madden, Madden & DelDuca, Haddonfield, NJ, for South Jersey Assets, Inc.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff West American Insurance Company ("West") brought this action seeking a declaratory judgment under 28 U.S.C. § 2201 to determine the extent of its obli-

gation to provide a continued defense and/or indemnification to defendant Endel Lindepuu in a pending state court proceeding. West filed this suit on November 12, 1998 and moved for summary judgment against Lindepuu on January 22, 1999. This motion was marked withdrawn without prejudice by my order dated March 4, 1999 granting South Jersey Assets Inc.'s ("SJAI") motion to intervene as a defendant in this action. On March 25, 1999 West filed an amended complaint. Presently before me is West's second motion for summary judgment, defendant SJAI's motion in opposition and cross-motion for summary judgment, and West's reply. Lindepuu did not respond to West's motion. Jurisdiction over this dispute is based on diversity of citizenship under 28 U.S.C. § 1332.

## I. BACKGROUND

SJAI, then known as Scarborough Corporation, was the developer and builder of homes in a residential development known as "The Beagle Club" in Vorhees, New Jersey. The doors and windows of these homes were installed by Lindepuu as a subcontractor of Scarborough. A group of homeowners who purchased their homes between 1987 and 1989 brought a class action in New Jersey state court against a number of defendants including Scarborough and Lindepuu[1] in September, 1993. *See William Frazier, et al v. Scarborough Corporation, et al,* Docket No. L–08548–93. Plaintiffs' principal allegations in *Frazier* were that Scarborough had fraudulently misrepresented the quality and suitability of the doors and windows in their homes and that Lindepuu had negligently installed them. West issued commercial general liability ("CGL") insurance policies to Lindepuu annually from November, 1985 through September, 1997. The defective condition of the windows first became manifest shortly before *Frazier* was filed on September 9, 1993. West filed this declaratory judgment action to determine the extent of its obligations to Lindepuu and/or Scarborough[2] on November 12, 1998.

On February 8, 1999 the *Frazier* plaintiffs reached a settlement with all defendants except Lindepuu. As part of the settlement plaintiffs had the option of either having the defective windows and doors on their homes replaced or receiving the cash equivalent thereof. In addition they received $1.6 million and were assigned Scarborough's rights for contribution or indemnification against Lindepuu as well as any rights Scarborough might have as an additional insured under Lindepuu's policy. As part of the agreement Scarborough and the other settling defendants were to receive the first $1 million of any recovery against Lindepuu. The remaining claims proceeded to trial on April 26, 1999 and ended in a mistrial at plaintiffs's request on May 12, 1999 due to Lindepuu's failure to produce certain documents during pretrial discovery. The *Frazier* plaintiffs then filed a motion for sanctions, attorney's fees and costs, and a default judgment. Shortly thereafter Lindepuu petitioned for bankruptcy under Title 7 of the U.S. Bankruptcy Code and an automatic stay of proceedings was imposed. This stay was terminated in December, 1999 when a discharge order was entered by the bankruptcy court.

This action requires me to determine whether the claims remaining in *Frazier* are covered by the terms and conditions of the policies issued by West to Lindepuu. The parties' motions for summary judgment present a number of issues. First, there is a disagreement as to which policies govern this dispute. SJAI maintains that the relevant policies are those in place at the time the windows and doors were installed, 1986–1989, while West contends

---

1. As his identity was unknown Lindepuu originally was sued as John Doe.

2. Scarborough was insured under the terms of the policies issued by West to Lindepuu to the extent of liability "arising out of" Lindepuu's work for Scarborough.

it is those in force when the injury to the *Frazier* plaintiffs first became apparent, sometime between 1992 and 1994. Second, West argues that the damage alleged in *Frazier* does not constitute an "occurrence" of "property damage" under the policies issued to Lindepuu and therefore West need not indemnify either Lindepuu or Scarborough as an additional insured or continue to provide a defense for Lindepuu. In the event that the alleged damage does constitute an "occurrence" West contends that Lindepuu's actions fall within one of the policies' exclusions. Finally, should I determine that West must provide coverage there is a dispute between the parties as to whether Lindepuu's actions constituted a single occurrence or a series of separate incidents.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c), "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment all reasonable inferences must be accorded to the party against whom the motion is made. *See Gans v. Mundy,* 762 F.2d 338 (3d Cir.1985). Neither SJAI or West dispute the basic facts underlying the claims in *Frazier* but rather seek a determination of West's insurance obligations. Under Pennsylvania law[3] where there are no genuine issues of material fact the inter-

pretation of the terms of an insurance contract is a question of law to be decided by the court. *See American Guarantee and Liability Ins. Co. v. Fojanini,* 90 F.Supp.2d 615, 619 (E.D.Pa.2000).

## III. DECLARATORY JUDGMENT

Both West and SJAI have moved for summary judgment as to West's obligations under 28 U.S.C. § 2201(a), the Declaratory Judgment Act. The Act dictates that there be an actual controversy ripe for adjudication before jurisdiction vests in a federal district court. *See IMS. Health Inc. v. Vality Technology Inc.,* 59 F.Supp.2d 454 (E.D.Pa.1999). Similarly, the constitutional requirement of a "case" or "controversy" requires that the actual controversy continue throughout the pendency of the lawsuit. *See, e.g., Preiser v. Newkirk,* 422 U.S. 395, 401–02, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

With the termination of the bankruptcy proceeding the *Frazier* plaintiffs are free to resume their case against Lindepuu. In the event of a new trial against Lindepuu West potentially must provide for his defense as well as satisfy any judgment entered against him. There is also an independent dispute as to whether West had an obligation to provide a defense and indemnification directly to Scarborough as an additional insured under Lindepuu's policies. Finally, there remains the claim for indemnification against Lindepuu for Scarborough's costs in settling the *Frazier* claims that was assigned to the *Frazier* plaintiffs as part of their settlement agreement with Scarborough. I am satisfied that there remains an actual controversy ripe for adjudication under 28 U.S.C. § 2201(a).

## IV. DISCUSSION

An insurer's obligation to defend an action against the insured is not necessarily coextensive with its obligation to

---

**3.** Both parties agree that Pennsylvania law governs this action. (Pl.'s Mot. for S.J. at 12; Def.'s Cr. Mot. for S.J. at 11 n. 3)

indemnify the insured. *See C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981). The duty to defend arises whenever the complaint filed by the injured party may potentially come within the policy's coverage. *See Diloreto v. CNA Insurance Co.*, No. Civ. A. 98–3488, 2000 WL 45994 at *2 (E.D.Pa. Jan.21, 2000). The duty to indemnify is more limited and arises only if it is established that the insured's damages actually are covered by the terms of the policy. *See id.* As the first trial in *Frazier* ended in a mistrial the claims have yet to be fully adjudicated and my focus must be on whether the underlying claims could potentially come within the coverage of the policy. *See Britamco Underwriters Inc. v. Stokes*, 881 F.Supp. 196, 198 (E.D.Pa. 1995). However, if there is no possibility that any of the underlying claims could be covered by the policies, "judgment in the insurer's favor with regard to the duty to defend and indemnification is appropriate." *Id.*

### A. The Policies in Force When the Injuries Were Discovered Govern the Dispute

▮▮▮ In its cross-motion for summary judgment SJAI argues that the policies issued by West between 1985 and 1988 govern this action since these were the policies in place when the doors and windows were installed. (Def.'s Cr. Mot. for S.J. at 17). While conceding that the normal rule under Pennsylvania law is that a tort "occurs" for insurance coverage purposes when the injuries caused by the tort first become apparent, *see, e.g., City of Erie v. Guaranty Nat. Ins. Co.*, 109 F.3d 156, 159 (3d Cir.1997), SJAI relies on the "multiple trigger" theory of liability utilized by the Pennsylvania Supreme Court in *J.H. France Refractories Company v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502 (1993). The *France* court relied on this theory in holding that due to the latent

nature of asbestos related injury an "occurrence" triggering the coverage of a general liability policy occurs at the time of the initial exposure, continues during the progression of the disease and ends with the disease's eventual manifestation.

SJAI contends that "[j]ust as asbestos [sic] is a latent disease which can cause damage over an extended period of time, so to [sic] was the injury allegedly inflicted by Lindepuu in this case of a latent nature." (Def.'s Cr. Mot. for S.J. at 18). SJAI bases this assertion on the *Frazier* complaint which alleged that Lindepuu's alleged negligent installation and its effects upon the homes of the plaintiff class members "could not be detected in the exercise of ordinary diligence because of the fact that Lindpuu's claimed failure to properly install the subject windows was masked by the structure of the homes themselves." *Id.* at 19. However, the *Frazier* plaintiffs also aver that they discovered defendants wrongdoing shortly before filing the complaint in September of 1993.[4] Lindepuu had continued to maintain his insurance coverage with West throughout this period. In *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.*, the Court of Appeals held, "the determination of when an occurrence happened must be made by reference to the time when the injurious effects of the occurrence took place." 676 F.2d 56, 62 (3d Cir.1982) (holding that coverage for damages stemming from a discriminatory employment policy should be measured from the time the policy was implemented because the "injurious effects" could be felt immediately). The damage allegedly caused by Lindepuu presumably produced injury when the homeowners of The Beagle Club discovered the damage which, they aver in their complaint, was sometime in the fall of 1993.

The *France* court departed from this general rule and used a multiple trigger

---

4. "Until shortly before the filing of the Complaint in this action, plaintiffs and the members of the class had no knowledge that de-

fendants were engaged in the wrongdoing alleged in each count herein." (*Frazier* Comp. ¶ 57).

analysis because the injuries caused by asbestos do not manifest themselves until a considerable time after the exposure causing the injury. Given this situation it was feared that defining an occurrence as taking place when the disease first manifested itself "would allow insurance companies facing countless future claims to terminate coverage during asbestosis' long latency period." *Erie* 109 F.3d at 164 (citations omitted)(discussing the application of the multiple trigger theory to areas outside asbestos related injury claims). If this occurred "[t]he entire burden of compensation would shift to the manufacturers even though the exposure causing injury occurred during the periods of insurance coverage." *Id.* In *Erie*, the Court of Appeals declined to apply a multiple trigger analysis to determine when the tort of malicious prosecution "occurred" for insurance purposes stating that "[t]o alter the settled rule in Pennsylvania that a tort occurs when the injuries first manifest themselves would frustrate the reasonable expectations of the parties to these contracts." *Id.* Since Lindepuu was insured both at the time the windows and doors were installed and when the alleged problems were discovered, "[t]he risk of insurance coverage termination which justifies use of the multiple trigger in asbestosis and other latent disease cases is not present here." *Id.* This action is governed by those policies in effect in the fall of 1993;[5] the period identified by the plaintiffs in *Frazier* as when the damage to their homes was discovered.

### B. Policy Coverage

 West maintains that it owes no obligation to either Lindepuu or SJAI as an additional insured because the allegations in *Frazier* lie either outside the scope of the policy issued to Lindepuu or fall within one of its exclusions. When interpreting an insurance contract, "the court must ascertain the intent of the parties as manifested by the language of the policy." *Visiting Nurse Assoc. of Greater Philadelphia v. St. Paul Fire & Marine Ins. Co.,* 65 F.3d 1097, 1100 (3d Cir.1995) (citations omitted). If a provision of an insurance policy is ambiguous, it must be construed against the insurer and in favor of the insured. *See id.* However clear and unambiguous language must be given its plain and ordinary meaning. *See id.* "[A] court must read insurance policies to avoid ambiguities and not torture the language to create them." *Id.*

 West contends that in the underlying state court action plaintiffs have abandoned any claim for consequential property damage, confining their claims to a demand for reimbursement for the cost of replacing the windows and doors installed by Lindepuu.[6] (Pl.'s Mot. for S.J. at 16). Such costs, argue West, fall outside the policies issued to Lindepuu which afforded coverage only with respect to claims for "damages" because of "bodily injury" or "property damage" caused by an "occurrence" taking place during the policy period. *Id.* at 20. However, in explaining the rationale behind this assertion West simply restates the policies' provisions concerning "property damage" and "occurrence" and then asserts without citation that since the plaintiffs in *Frazier* are seeking only the replacement costs for the windows and doors Lindepuu is not entitled to coverage.[7] *Id.* at 16–20. In a

---

5. There are two policies covering the periods from November 1, 1992 to September 29, 1993 and September 29, 1993 to September 29, 1994. As the relevant portions of these two policies are identical it is not necessary to determine which of them applies to the plaintiffs' claims in *Frazier*. For clarity I refer to the relevant policies as "the policy" in the remainder of this opinion.

6. I will examine this issue below. *See infra* sec. IV(B)(2).

7. West does cite to a number of cases that support its position that CGL policies generally do not cover damage that is restricted solely to the work of the insured. (Pl.'s Mot. for S.J. at 23–34). However these cases interpret explicit exclusions contained in the policies similar to those discussed in the following section, *infra* sec. IV(B)(1), and provide

motion for summary judgment "[t]he burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987). Further, insurance policies must be construed "in a manner which is more favorable to coverage." *Houghton v. American Guar. Life Ins. Co.*, 692 F.2d 289, 291 (3d Cir.1982). An insurance company has a duty to defend if there is a claim that potentially comes within the policy. *See American States Insurance Co. v. State Auto Ins. Co.*, 721 A.2d 56, 59 (Pa.Super.1998). As there is nothing on the face of the policy and no legal authority cited to support West's assertion that the replacement of the windows and doors installed by Lindepuu does not constitute a claim of "property damage" caused by an "occurrence," summary judgment on this issue will be denied.

. no support for West's assertion that the damages alleged by the *Frazier* plaintiffs are not an "occurrence" of "property damage" under its policies.

8. Under the policies issued to Lindepuu in 1992 and 1993 insurance does not apply to:

(j) "Property damage" to: (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

(k) "Property damage" to "your product" arising out of it or any part of it.

(*l* ) "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(m) "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work". . . .

(n) Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) "Your product;" (2) "Your work;" or (3) "Impaired property;" if such product work or property is withdrawn or recalled from the market or from use by any person or organization because

## 1. Exclusions

"Alternatively," asserts West, "even if plaintiffs' remaining claims are viewed as involving accidental property damage, those claims are barred under . . ." exclusions "j(6)", "l", "m" and/or "n," [8] relieving any obligations it has to indemnify or defend Lindepuu. (Pl.'s Mot. for S.J. at 20). Under Pennsylvania law an insurer's duty to defend remains with the insurer until facts become known sufficient to confine the claims to liability outside the scope of the policy. *See Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F.Supp. 1090, 1093 (E.D.Pa.1994). Exclusions are strictly construed against the insurer, *see Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir.1998), and the insurer has the burden of showing that any policy exclusions preclude coverage, *see American States Ins. Co. v. Maryland Cas. Co.*, 427 Pa.Super. 170, 628 A.2d 880, 887 (1993).

of a known or suspected defect; deficiency, inadequacy or dangerous condition in it. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less usable because:

(a) It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

(b) You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

(a) The repair replacement adjustment or removal of "your product" or "your work"; or

(b) Your fulfilling the terms of the contract agreement.

"Your Product" means:

(a) Any goods or products, other than real property, manufactured, sold handled, distributed or disposed of by:
1. You

"Your work" means:

(a) Work or operations performed by you or on your behalf; and

(b) Materials, parts or equipment furnished in connection with such work or operation.

"Your work" includes:

(a) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(b) The providing of or failure to provide warnings or instructions.

However, "[e]xclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitations or understood their import." *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985) (citations omitted).

According to SJAI Lindepuu's improper installation may not be exempted from coverage under exclusions for harm caused to the insured's own work or product, because the damage was not to the windows and doors alone but to the homes within The Beagle Club as a whole. (Def.'s Cr. Mot.' for S.J. at 20). In support of this assertion SJAI relies on *Imperial Casualty and Indemnity Co. v. High Concrete Structures, Inc.,* 858 F.2d 128 (3d Cir. 1988) and *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co. of New York,* 281 F.2d 538 (3d Cir.1960). In *Pittsburgh Plate Glass* allegedly defective paint was used to make window blinds and in *Imperial* allegedly flawed steel was used to make washers. "In each instance the purchaser created a new product having a value in excess of the value of the product supplied by the insured and [therefore] suffered damage to more than just the insured's product." *Imperial* 858 F.2d at 134, 135. In support of its holding the circuit court in *Imperial* cited *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 512 Pa. 420, 517 A.2d 910, 914 (1986), stating:

> In that case a contractor was sued by purchasers of a home that the contractor had allegedly constructed negligently and in an unworkmanlike manner. The contractor was held not entitled to comprehensive general liability coverage. Because the insured contractor was responsible for constructing the entire home, the home necessarily had to be considered the insured's own work product.

858 F.2d at 135. Here, SJAI maintains, Lindepuu was responsible only for the windows and doors yet the damage he caused affected Scarborough's product: the entire home. *See, e.g., Stone & Webster Engineering Corp. v. American Motorist Insurance Co.,* 458 F.Supp. 792, 794–95 (E.D.Va.1978) ("property damage" exists, notwithstanding the exclusions, on the basis of an insured's supplying a faulty component which, when incorporated into a product, causes damage to the whole); *Ohio Cas. Ins. Co. v. Bazzi Constr. Co.,* 815 F.2d 1146, 1148–49 (7th Cir.1987) (holding that property damage had occurred where new construction damaged an existing garage; but if an entirely new structure had been built the work product exclusions would have precluded coverage since the damage would have been limited to the work product of the insured).

Even if SJAI is correct, however, and the windows and doors are not Lindepuu's "product" SJAI offers no explanation as to why the damage attributed to Lindepuu would not constitute either "impaired property" or his "work" under exclusion "n." *See supra* n. 8. Under this provision coverage does not apply to damages for the "repair," "replacement," "adjustment," or "removal" of "your work," "impaired property" or "your product." "Your work" under the policy includes work performed by the insured as well as materials furnished in connection with such work. *Id.* "Impaired property" is defined as tangible property, other than the insured's product or work, that cannot be used or is less usable because it incorporates the insured's product or work that is thought to be "defective, deficient, inadequate or dangerous." *Id.*

The *Frazier* complaint alleged negligent selection of Capitol aluminum windows and doors for plaintiffs' homes (Count One); negligent installation of those windows and doors (Count Two); consumer fraud (Count Three); and negligent misrepresentation as to the quality of the windows and doors, as well as the quality of their installation (Count Four). SJAI maintains that "the windows and doors were supplied by Scarborough Corporation" and "Lin-

depuu acted solely as the installer of the windows and doors and in fact was responsible for supplying only certain minor items, such as caulking, flashing and nails." (Def.'s Cr. Mot. for S.J. at 13). SJAI also points out "plaintiffs' experts have opined that the negligent installation of these windows resulted in damage and degradation over time in the windows and their ability to function." *Id.* at 16. Accepting SJAI's characterization as true, I fail to see how Lindepuu's negligent installation can be anything other than either his "work" or "impaired property" that was "withdrawn from use" and had to be "replaced" or "repaired" "because of a known or suspected defect, deficiency" or "inadequacy," and therefore subject to exclusion "n." *See supra* n. 8. Lindepuu installed the windows and doors in an allegedly negligent fashion. This constitutes his "work." The windows and doors themselves are either also his "work" or property other than his own that cannot be used or is less usable because it incorporates work that is thought to be defective, deficient, or inadequate; or in other words "impaired property." Under Pennsylvania law "if the language of an insurance policy is clear and unambiguous, its ordinary meaning is to be given effect; policy terms should be read to avoid ambiguities." *Imperial*, 858 F.2d at 131. Under the plain language of the policy the claims against Lindepuu for damage to the windows and doors and the cost for their replacement are not covered under Exclusion "n." [9]

If the plaintiffs' claims in *Frazier* were restricted to the cost of repairing or replacing the the windows and doors my inquiry would be at an end and judgment in West's favor would be appropriate. However SJAI maintains that the claims remaining in the underlying state action allege additional consequential property damage.

### 2. Consequential Damages

CGL policies are normally intended to afford coverage for damage to the property of others. *See Marine Office of America Corp. v. Quarry Assoc., Inc.*, 963 F.Supp. 1392 (E.D.Pa.1997). Under Pennsylvania law an insurer's duty to defend an insured against such claims arises whenever the complaint filed by the injured party may potentially come within the policy's coverage. *See Diloreto v. CNA Insurance Co.*, No. Civ. A. 98–3488, 2000 WL 45994 at *2 (E.D.Pa. Jan.21, 2000). "The obligation to defend is determined solely by the allegations of the complaint in the action." *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). In determining this obligation the factual allegations of the complaint are construed liberally, giving the insured the benefit of all doubts as to whether the claim potentially falls within the policy's coverage. *See Borough of Kennet Square v. First Mercury Syndicate, Inc.*, No. 98–0168, 1998 WL 401603 at *4 (E.D.Pa. July 9, 1998). An insurer is obliged to defend the entire claim even if only some of the allegations in the complaint fall within the terms of coverage and others do not. *See C. Raymond Davis & Sons, Inc. v. Liberty Mut. Ins. Co.*, 467 F.Supp. 17, 19 (E.D.Pa. 1979). However, this duty is not interminable and remains only until the claims are confined to a recovery that is not within the scope of the policy. *See Rieder v. Cherokee Ins. Co.*, 635 F.Supp. 699, 701 (E.D.Pa.1986). Once the insurer establishes that the facts of record support only claims that fall outside the policy's coverage, its duty to defend ceases. *See Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co.*, 750 F.2d 267, 274 (3d Cir.1984).

While conceding that the *Frazier* complaint originally alleged damages beyond the costs of repairing or replacing the

---

**9.** West claims that coverage might also be precluded by Exclusions "j(6),", "k," "l," and "m." Having determined that the allegations made in *Frazier* against Lindepuu concerning the repair and replacement of the windows and doors fall within exclusion "n" I need not determine if any of these other exclusions also apply.

windows and doors,[10] West relies on subsequent filings and discovery disclosures to assert that the plaintiffs "are no longer seeking compensation for any damage to their individual homes or contents." (Pl.'s Mot. for S.J. at 3, 3–6). In *Charter Oak* the court determined that the allegations in the underlying complaint were initially broad enough that the insurer would have had a duty to defend the insured. 750 F.2d at 272. However the Court of Appeals held that following a "pretrial narrative statement which clarified the issues to the point where it was clear that the claim to be tried fell outside the coverage of the policy," the insurer had confirmed the claim sufficiently that it had no duty to defend the insured. *Id.* In *St. Paul Fire & Marine Insurance Co. v. Appalachian Inc. Co.*, Civ. A. No. 87–6071, 1988 WL 124605 at *1 (E.D.Pa. Nov.18, 1988), the insurer attempted to rely on responses to interrogatories to confine the claim of the insured to a specific time period. The court held that these answers could not confine a claim to the point where the insurer could cease defending its insured.[11] However, the *Appalachian* court interpreted *Charter Oak* to state that "if an insurer can produce an admission from the plaintiff in the underlying action which narrows the scope of the complaint to the point where the insurer no longer could be liable to indemnify the insured, then the insurer may terminate its defense." *Id.* at *2. The court further stated that even something less than an admission might justify the termination of an insured's defense; however, an "inconclusive answer to an interrogatory" would not suffice. *Id.*

10. The *Frazier* complaint states that the windows and doors were "defective and allowed excessive air and water infiltration and caused excessive water accumulation and damages to said homes"(¶ 39), that "[e]xcessive water condensation on the aluminum windows and doors caused mold and mildew to form on the sills and inside (¶ 41), and by reason of defendants conduct plaintiffs sustained damages including "damage to individual real personal property, depreciation of the value of individual real and personal property, unnecessary and costly repair and heating

In support of its assertion that the *Frazier* plaintiffs have "unequivocally abandoned any claims for consequential damage," (Pl.'s Mot. for S.J. at 16), West quotes plaintiffs as stating to the *Frazier* court,

> [w]hen all is said and done this is a simple case about windows.... One subcontractor, Endel Lindepuu, inappropriately installed that window in the homes of each class member in the identical fashion.... The remedy that the plaintiff seeks, the removal and replacement of these windows, is common to each member of the class. These claims involve no individual issues.

(Pl.'s Mot. for S.J. at 4)(quoting *Frazier* plaintiffs' memorandum in opposition to motion for leave to appeal). And similarly:

> Even the damages can be determined on a common basis. The plaintiffs' expert will testify as to the cost of replacing a Capital window with a window of suitable quality for the climate of New Jersey. The jury verdict can then be molded by the Court by multiplying the per window amount of damage by the total number of windows in the homes of the members of the Class.

(Pl.'s Mot. for S.J. at 6)(quoting *Frazier* plaintiffs' brief in opposition to motion for leave to appeal). Further in responding to Lindepuu's interrogatory concerning "what damage [they] claim was caused by the alleged negligent installation of the doors and/or windows," plaintiffs stated that they

> will rely at trial upon the testimony of their expert witnesses as to the type and amounts of damages claimed, which

bills, interference with and disruption of the enjoyment of their homes, past and/or future costs of window and door replacement, and lost time from work" (¶ 56).

11. The insurer in *Appalachian* attempted to isolate the claim to a period after March 1979 based on responses that stated that defamatory statements had been made in July 1993, and "[o]ther occasions yet to be determined." 1988 WL 124605 at *1.

damages will be the reasonable estimate for removal of the Capitol Products aluminum windows and doors installed in their homes and the replacement with a comparable grade true thermal break window installed in accordance with the practices that a reasonably prudent builder/window installer would follow. (Pl.'s Mot. for S.J. at 5)(quoting *Frazier* pls' resp. to Lindepuu's int. # 3). This is a considerably more definitive answer than the one found "inconclusive" in *Appalachian.*

In response SJAI simply denies that plaintiffs have abandoned the allegations of consequential damages clearly pled in the *Frazier* complaint. (Def.'s Cr. Mot. for S.J. at 13). While asserting that West has failed to demonstrate that the claims pursued in *Frazier* have been "patently" or "clearly" narrowed so as to fall outside the policies' coverage,[12] SJAI offers no explanation as to how the plaintiffs in *Frazier* will or could pursue claims of consequential damages following their previous statements to the state court. Instead SJAI claims that the damage to the doors and windows themselves should be covered by West's policy. *Id.* As determined above such damage is not covered due to the exclusions contained in the policy. SJAI also points to its own settlement agreement with the *Frazier* plaintiffs which provided for the repair of the damage caused by doors and windows as evidence of alleged consequential damages *Id.* However, the settlement was between the plaintiffs, Scarborough and the real estate company who helped sell the homes in the Beagle Club. These defendants were accused of fraud and negligent misrepresentation in the underlying action whereas, as SJAI concedes, the claims

against Lindepuu are restricted to the negligent installation of the windows and doors. *Id.* at 13. I fail to see how a settlement with defendants accused of independent tortious activity that includes compensation for consequential damages broadens the scope of plaintiffs claim against Lindepuu, where plaintiffs have clearly represented to the state court that the damages sought are restricted to the replacement and repairs of the windows and doors.[13]

I recognize that the issuer of a liability insurance policy has a duty to defend its insured "when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co.,* 25 F.3d 177, 179 (3d Cir.1994). However, based on the their own characterization of the nature of their claims, the *Frazier* plaintiffs have narrowed the scope of their original complaint and eliminated any claims for consequential damages against Lindepuu. If plaintiffs are completely successful in their case against Lindepuu he will be found liable for the negligent installation of the doors and windows, and plaintiffs will recover the damages they expressly informed the court they sought: "the reasonable estimate for the removal ... of the windows and doors ... and [their] replacement ... with comparable" substitutes. (*Frazier* Pls' Resp. to Lindepuu's Int. # 3). There are no claims remaining in *Frazier* which potentially fall under West's policies as consequential property damage.

### C. Single Occurrence

There remains a dispute between the parties as to whether under the policy

---

12. Curiously SJAI cites to *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172 (1991) and *Charter Oak,* 750 F.2d 267, neither of which use the term "patently" or "clearly" in this context.

13. SJAI also notes that "Scarborough's claim for indemnification against Lindepuu remains viable and, presumably, Scarborough should

be able to recover from Lindepuu those amounts which it has been compelled to pay plaintiffs because of Lindepuu's own negligence." (Def.'s Cr. Mot. for S.J. at 13). As all claims against Lindepuu in *Frazier* have been found to lie outside the policy issued by West any such indemnification claim would not be covered.

Lindepuu's actions constituted a single "occurrence" or a series of "multiple occurrences." Since none of the claims in *Frazier* against Lindepuu are covered by West's policies I need not resolve this issue.

### D. *Scarborough as an Additional Insured*

 Under the terms of Lindepuu's policies Scarborough was listed as an "additional insured." This entitled Scarborough to coverage with respect to liability "arising out of" Lindepuu's work for the developer, and subjected it to the same terms and conditions which apply to Lindepuu. *See North Wales Water Authority v. AETNA Life and Cas.*, No. Civ. A. 96–0727, 1996 WL 627587 at *1 (E.D.Pa. Oct. 30, 1996). The work performed by Lindepuu was the installation of the doors and windows in the homes of the Beagle Club. The plaintiffs in *Frazier* narrowed their claim to damages arising out of the costs for repairing or replacing these items. As discussed above such claims are exempt from coverage under the exclusions contained in the policy West sold to Lindepuu. This exclusion includes claims against Scarborough arising out of the uncovered work of Lindepuu.

As there is no possibility that any of the claims in *Frazier* are covered by the policies issued to Lindepuu by West covering the period from November 1, 1992 to September 29, 1994, West has no obligation to indemnify or defend any claims against Lindepuu, or Scarborough as an additional insured, arising out of that action.

An appropriate Order follows.

### ORDER

AND NOW, this day of December, 2000, after consideration of plaintiff's motion for summary judgment, defendant South Jersey Assets Inc.'s cross-motion for summary judgment, plaintiff's reply, and for the reasons set forth in the accompanying memorandum, it is ORDERED:

1. Plaintiff's motion for summary judgment is GRANTED.

2. Defendant South Jersey Assets Inc.'s cross-motion for summary judgment is DENIED.

3. Judgment is entered in favor of plaintiff West American Insurance Co. and against defendants South Jersey Assets, Inc. and Endel Lindepuu.