OPINION
McKEE, Circuit Judge.
Allstate Insurance Company appeals the District Court’s order in this declaratory action in which that court ruled that Allstate had a duty to defend and indemnify Drumheller pursuant to its homeowner’s policy with him. Drumheller had been sued to recover for injuries sustained by a third party as a result of an accident involving an all-terrain vehicle or ATV. For the reasons that follow, we will affirm the District Court.
I.
Since we write primarily for the parties who are familiar with this dispute, we need not set forth the factual or procedural background except insofar as may be helpful to our brief discussion. Drumheller’s Deluxe Homeowner’s Policy with Allstate provides limited coverage for bodily injury arising out of the use of an ATV, but contains the following exclusion:
Losses We Do Not Cover Under Coverage X:
We do not cover bodily injury ... arising out of the ownership ... use of any motor vehicle.... However, this exclusion does not apply to: b. any motor vehicle designed principally for recreational use off public roads, unless the vehicle is being used by an insured person and is being used away from an insured premises.
The following definitions that are contained in the policy are relevant to our discussion:
7. “Residence Premises” means the dwelling, other structures and land located at the address stated in the Policy Declarations
8. “Insured Premises” means:
(a) the residence premises; and
(b) Under Section II only ....
(6) any premises used by an insured person in connection with the residence premises.
In the coverage action underlying the instant dispute, the District Court initially determined that Allstate did not have a duty to defend or to indemnify Drumheller, because the injuries that are involved in the personal injury action in which Drumheller is a defendant occurred when the ATV struck a manhole on a trail which was not on the “residence premises.” App. at 26. Accordingly, the District Court reasoned that Drumheller was a trespasser. App. at 27. The District Court framed the coverage issue under the relevant language of the policy as “whether the trail on which Drumheller was operating the ATV was used ‘in connection with the residence premises.’ ” App. 26. *154 After reviewing the undisputed facts, and relevant case law, the District Court held:
Drumheller possesses no property rights in the trail, and use of the trail is not necessary to access his residence premises. Aside from Drumheller’s use of the trail for recreational purposes, [Drumheller and Katzenmoyer] have failed to present any evidence that demonstrates a connection between Drumheller’s premises and the trail.
App. 28.
Drumheller and Katzenmoyer appealed, and we remanded in an unpublished opinion, dated September 30, 2004. There, we noted that the Pennsylvania Superior Court had decided State Farm Fire and Casualty Co. v. MacDonald, 850 A.2d 707 (Pa.Super.2004), after the District Court had entered judgment in favor of Allstate in Allstate’s declaratory judgment action. In MacDonald, the Superior Court found that a homeowner’s policy covered liability for the death of a visitor using an ATV even though the accident occurred on a field that was adjacent to the insured property. Since MacDonald bore directly on the coverage dispute between Drumheller and Allstate, we vacated the District Court’s grant of summary judgment and remanded that dispute so the District Court could determine if MacDonald had any impact on its grant of summary judgment. App. at 296.
On remand, the District Court found that MacDonald did impact its original analysis. The court predicted that the Pennsylvania Supreme Court would follow the MacDonald analysis as to the scope of the coverage of Allstate’s policy with Drumheller.[1] Accordingly, the District Court held that Allstate had a duty to defend and to indemnify Drumheller in Katzenmoyer’s state court personal injury action[2] App. 297-300.
Allstate then filed this appeal.[3]
*155 II. DISCUSSION
Under the terms of the policy, Katzenmoyer’s bodily injury is not covered if Drumheller was operating the ATV “away from an insured premises.” More specifically, if Drumheller was not operating the ATV on his “residence premises” or on “any premises used by [Drumheller] in connection with the residence premises,” Katzenmoyer’s bodily injury claim is not covered and, therefore, Allstate has no duty to defend or to indemnify Drumheller in Katzenmoyer’s state court action. Obviously, when Drumheller struck the sewer manhole on the trail, he was not operating the ATV on his “residence premises.” Therefore, the dispositive issue is whether the trail was used “in connection with the residence premises.”
As noted, on remand the District Court applied the analysis in MacDonald and reasoned that, since the accident on the trail occurred in a location that Drumheller used in connection with the residence premises, the resulting injuries were covered under Allstate’s policy. Therefore, after predicting that the state supreme court would follow MacDonald’s reasoning,[4] the District Court held that Allstate had a duty to defend and to indemnify Drumheller in Katzenmoyer’s personal injury action. Our analysis of MacDonald leads us to the same conclusion.
A. State Farm Fire and Casualty Co. v. MacDonald, 850 A.2d 707 (Pa.Super.2004).
The facts of MacDonald are well-known to the parties and were thoroughly discussed during oral argument. Accordingly, we need not reiterate them in great detail. The policy State Farm issued to MacDonald excluded coverage for bodily injury arising out of the ownership of “a motor vehicle owned ... by ... any insured .... ” 850 A.2d at 709. The policy defined a motor vehicle to include “a motorized ... all-terrain vehicle ... owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location.” Id. at 709-10. Finally, the policy defined “insured location” to mean:
a. the residence premises;
b. the part of any premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;
*156 c. any premises used by you in connection with the premises included in [a. or b.]
Id. at 710 (emphasis in original).
In disposing of State Farm’s appeal, the Superior Court first noted that the policy did not define “use” or the phrase “in connection with.” The Superior Court held that “use” and “in connection with” had to be interpreted “according to their plain and ordinary meanings.” Id. at 711. Thus, it concluded:
In common parlance, “use” means “continued or repeated exercise or employment,” or “habitual or customary practice.” Webster’s Third New-International Dictionary 2523 (4th ed.1976). “Connection” means “the act of connecting: a coming into or being put in contact, id. at 481, and “with” is defined as “alongside of: near to.” Id. at 2626.
Id. at 711. Accordingly, the Superior Court held that because MacDonald “repeatedly rode his ATV from his property onto the adjacent field and back,” he “used the adjacent field in connection with his residence premises.” Id.
The Superior Court found support for its analysis in Nationwide Mut. Ins. Co. v. Prevatte, 108 N.C.App. 152, 423 S.E.2d 90 (1992), which involved an ATV accident on a trail that began on the insured’s property and ended on a neighbor’s property. Id. at 91. In her deposition, the insured testified that her children regularly rode ATVs on the property where the accident occurred; that the family used the trail for walking; that the family had been walking and riding on the trail for several years; and that each walk or ride began and ended on the insured’s property. Id. at 92.
The homeowner’s policy there defined insured location as the “residence premises” and “any premises used by you in connection with” the residence premises. Id. at 91 (emphasis in original). Nationwide argued that the definition of an insured location, when read in context with the whole policy, applied only to those places in which the insured had a legal interest. The North Carolina court disagreed and found that the plain language of the definition of an “insured location” controlled, and held, based on the insured’s deposition testimony, that the location where the accident occurred qualified as an insured location “as defined by the policy because it was used in connection with the [insured’s] residence.” Id. at 92.
That trail was used “in connection with” the insured’s residence, and the court was unwilling to rewrite the policy “to restrict coverage to locations where the insured [had] a legal interest.” Id. In rejecting Nationwide’s invitation to restrict the language of the policy the court noted:
that plaintiff-insurer, who drafted the policy, had the opportunity to restrict the definition of insured location to include only those locations in which the insured had a legal interest, by expressly providing so in the policy. Plaintiff-insurer failed to include such a provision. Absent such a clause of restriction, coverage should not be denied under the facts of this case.

Id.

In deciding MacDonald, the Pennsylvania Superior Court found “such reasoning persuasive as State Farm [had] also failed to limit its coverage to., those areas in which the insured has an underlying legal interest. Under the plain language of the definition of an ‘insured location,’ [thus, it concluded] MacDonald is entitled to coverage.” MacDonald, 850 A.2d at 712.
Here, Allstate criticizes the District Court both for predicting that the Pennsylvania Supreme Court would follow Mac *157 Donald and for applying the MacDonald, analysis. It makes a number of arguments as to why it has no duty to defend or to indemnify Drumheller in Katzenmoyer’s state court personal injury action.[5] We consider each of Allstate’s arguments below:

B. MacDonald’s facts are different and, therefore, MacDonald does not control.

Allstate begins by noting that in MacDonald, the field where the accident occurred was “adjacent” to MacDonald’s property. Therefore, Allstate claims that Drumheller must establish that his property is “contiguous or immediately adjacent” to MacElhenney’s property where the trail is located. However, argues Allstate, there is no conclusive evidence that Drumheller’s property “is bounded by the MacElhenney land.” Indeed, Allstate argues that the record demonstrated that to get to the trail, Drumheller had to leave his own property. According to Allstate:
[T]he record more clearly demonstrates that in order for
Drumheller to access the trail created by the construction of the sanitary sewer easement he had to cross []over a bridge leaving his property, proceed briefly on a closed public road called Mayberry Road, then enter onto his Aunt Diane and Uncle Ed’s property, travel along easement trail passing manholes # 3-# 4-# 5 (which appear to be on the [Aunt and Uncle’s property], and then enter the first MacElhenney parcel containing manhole # 6 and then proceed onto the second MacElhenney parcel before arriving at manhole # 7.
Allstate’s Br. at 15.
We note, though, that Allstate does not say how far Drumheller’s property is from the beginning of the trail on MacElhenney’s property. Drumheller’s deposition testimony establishes the two pieces of land are quite close, even if they do not actually touch:
Q: When you come down and across the bridge from your house and you turn right onto the trail, you don’t go onto Mayberry Road, do you?
A: I would be on Mayberry for a blink of an eye.
Q: Just a couple of feet?
A: Yes.
App. at 270.
In any event, although the parties spend a great deal of time arguing about whether the two properties are adjacent, we do not think that is dispositive. The foundation of Allstate’s argument is that the Superior Court in MacDonald said that the field where the accident occurred was “adjacent” to MacDonald’s property. Allstate believes that the court’s analysis was determined by the fact that the property where the accident occurred was “contiguous” to MacDonald’s property. We disagree. “Adjacent” does not mean “contiguous,” and we do not interpret MacDonald as requiring property to touch or share a common border with property in which the insured has a legal interest in order to be “adjacent” to that property or be used “in connection with” it.
*158 Webster’s Third New International Dictionary at 26, defines “adjacent” as follows:
“not distant or far off’ or “relatively near and having nothing of the same kind intervening” or “having a common border” or “abutting” or “touching” or “living nearby or sitting or standing relatively near or close together” or “immediately preceding or following with nothing of the same kind intervening.”
Black’s Law Dictionary at 38, defines “adjacent” as follows:
“Lying near or close to: sometimes, contiguous; neighboring. Adjacent implies that the two objects are not widely separated, though they may not actually touch.”
Thus, the fact that the Superior Court referred to the property where the accident occurred in MacDonald as being “adjacent” to MacDonald’s property does not mean that the court was requiring the two parcels to actually touch in order for an accident on the former to be covered under the applicable policy language. The MacDonald court’s description of where the accident occurred simply does not mean that MacDonald’s property and the “adjacent” property were contiguous or bounded by each other. Indeed, Black’s Law Dictionary at 26 draws a distinction between “adjacent” and “adjoining.” While “adjacent” is defined as above, “adjoining imports that [the objects] are so joined or united to each other that no third object intervenes.” Had the Superior Court described the location of the accident as “adjoining” MacDonald’s property rather than being “adjacent” to it, Allstate’s argument would have considerably greater force.
However, we do not believe that the precise physical relationship of Drumheller’s property to the MacElhenney property is the crucial inquiry. The entire focus in MacDonald was MacDonald’s repeated use of the ATV on his property and on the adjacent field; not the precise relationship of the two parcels which were merely described as “adjacent.” We think that the Pennsylvania Supreme Court would follow MacDonald’s holding that “in connection with” means the repeated use of the ATV emanating from and returning to the insured’s residence.
Moreover, just as the Superior Court stressed, had Allstate intended to restrict coverage to property that actually adjoined or touched the insured premises, it could have easily drafted an appropriate limitation into the exclusions in the policy. It could have simply defined “insured premises” as “any adjoining or contiguous premises used by an insured person in connection with the residence premises.” However, it did not define “insured premises” with any such restrictions.[6]
C. The District Court ignored the issue of the ownership of the trail.
On remand, the District Court found that the only possible distinction between *159 MacDonald and the instant dispute “is the fact that the trail in the [Drumheller] case was within an easement acquired by the municipality.” App. 32. The court believed that “possible distinction” was one “not material.” Id.
Allstate submits that the distinction is material and cites two cases which it claims have held that publicly-owned property can never be an “insured premises.” Allstate’s Br. at 16 (citing U.S.A.A. v. Parry, 158 Ariz. 83, 761 P.2d 157 (Ct.App.1988) (drainage basin) and Safeco v. Brimie, 163 Ill.App.3d 200, 114 Ill.Dec. 422, 516 N.E.2d 577 (1987) (public school playground)). However, both cases are from state intermediate appellate courts outside of Pennsylvania, and therefore are not as persuasive as to how the Pennsylvania Supreme Court would rule if faced with Drumheller’s case as MacDonald is.
Allstate also submits that a public street and a public right-of-way cannot be a part of an insured’s premises. In fact, Allstate claims to have litigated that issue on several occasions and prevailed. Allstate’s Br. at 16-17 (citing cases). However, with one exception, the cases cited by Allstate are decisions of state intermediate appellate courts. Therefore, as noted above, they cannot be used to predict how the Pennsylvania Supreme Court would rule if confronted with this coverage dispute. The only state supreme court ease cited by Allstate is Falkosky v. Allstate Ins. Co., 312 S.C. 210, 439 S.E.2d 836 (1993). However, the issue there was whether an off-road motorcycle was “being used away from an insured premises” when the rider had an accident on a vacant lot near the insured’s premises. The issue was not, as here, whether an ATV accident occurred on property “used by an insured person in connection with the residence premises.” Thus, Falkosky is not as helpful as MacDonald.
Moreover, we doubt that the easement obtained by the municipal authority here can be characterized as either a public road or a public right-of-way. It was a municipal easement obtained to construct a sewer line. The fact that there was a municipal easement does not mean that the MacElhenneys were not still the private owners of that land for the purpose of predicting whether the Pennsylvania Supreme Court would apply the reasoning of MacDonald.
D. Better reasoned decisions.
Allstate argues that even assuming that the MacElhenney’s property is “sufficiently proximate, adjacent to or ‘connected with’ the Drumheller property, better reasoned judicial opinions than MacDonald compel judgment” in its favor. Allstate’s Br at 18-19 (citing cases). The “better reasoned judicial opinions” cited by Allstate are decisions of state intermediate appellate courts or District Courts not located in Pennsylvania that are not applying Pennsylvania law. We don’t find them very helpful in predicting the outcome here.
Even the case most heavily relied upon by Allstate does not significantly advance its position. In Massachusetts Prop. Ins. Underwriting Assoc. v. Wynn, 60 Mass. App.Ct. 824, 806 N.E.2d 447 (2004), the court held that the term “insured location” was limited to the residence and premises integral to its use as a residence. Thus, a beach 500 feet away that was owned by an owner’s association and regularly used by the insured, was not used in connection with the residence premises.
To adopt the reasoning of Wynn, we would have to re-write the terms of Drumheller’s policy to limit coverage to the residence premises and premises integral to its use as a residence. The instant policy does not refer to property that is “an *160 integral part” of Drumheller’s residence; it refers to property that is regularly used “in connection with” it. It is clear that Drumheller’s regular recreational use of the property in question was “in connection with” his residence.
E. Drumheller’s status as a trespasser.
The District Court initially noted that Drumheller was a trespasser while riding on the trail. On remand, however, the court did not repeat that observation, either because it felt that Drumheller’s status as a “trespasser” was irrelevant to its analysis or because it did not consider the issue. In either event, Allstate argues here that the District Court’s statement in its first opinion that Drumheller was a trespasser was significant because it is against public policy to allow a trespasser, through repeated trespass, to transform another’s property into a place that is used “in connection with” the trespasser’s residence. However, it offers no authority for that public policy argument.
In addition, Allstate claims that the owner of the adjacent field in MacDonald, conferred the status of a licensee upon the ATV users by extending permission to them to drive the ATVs on the field. Therefore, Allstate argues that, under MacDonald, Drumheller’s status as a trespasser has to be considered in determining whether the trail was “used in connection with” Drumheller’s property. Allstate’s argument that the MacDonald ATV users were licensees on the adjacent field is based upon the following snippet of MacDonald’s deposition testimony discussing the adjacent field:
I did meet one of the farmers — I don’t remember what year ... they were on their tractor ... and what I remember is, as long as we stayed on the perimeters of the fields ... nobody had a problem with that.
MacDonald, 850 A.2d at 711. However, there is no indication who the farmers were or if they were in fact the owners of the adjacent field, and the court certainly did not factor that into its analysis. We are not willing to attach more importance to that testimony than did the court that decided the case.
Moreover, even if we assume arguendo that Drumheller was a trespasser on the trail, we do not believe that he would be excluded from coverage under the policy. Given the language of the policy, the issue would remain whether he used the trail “in connection with” his residence premises. He clearly did.
E. To be a “premises used in connection with” requires that the insured have some legal interest in the accident location.
Despite the fact that MacDonald held that the insured did not need a legal interest in the place where the accident occurred in order for it to be a premises used in connection with the insured’s residence premises, Allstate argues that the terms of its policy require that the insured have such a legal interest. In making that argument, Allstate points to the definition of “insured premises” contained in the policy, which reads:
8. “Insured premises” — means:
a) the residence premises; and
b) under Section II only:
1) the part of any other premises, other structures and grounds, used by you as a residence. This includes premises, structures, and grounds you acquire for your use as a private residence while this policy is in effect;
*161 2) any part of a premises not owned by an insured person but where an insured person is temporarily living;
3) cemetery plots or burial vaults owned by an insured person;
4) vacant land, other than farmland, owned by or rented to an insured person;
5) land owned by or rented to an insured person where a one, two, three or four family dwelling is being built as that person’s residence;
6) any premises used by an insured person in connection with the residence premises;
7) any part of a premises occasionally rented to an insured person for other than business purposes.
App. at 50.
However, even the most cursory glance at this provision of the policy shows that this argument is meritless. Although many of these sub paragraphs clearly require or anticipate a legal interest, the provision at issue here, II 8.b.6, clearly does not. This argument appears to be yet another attempt to have us amend the policy language, something we cannot do. “Any premises used by an insured person in connection with the residence premises,” is not restricted to premises in which the insured has a legal interest. “Any” means “any.”
F. Inconsistent Superior Court opinions.
Finally, Allstate contends that two preMacDonald Superior Court opinions are inconsistent with MacDonald because they support the proposition that a legal interest is a relevant consideration. The cases Allstate considers inconsistent with MacDonald are Federal Kemper Ins. Co. v. Derr, 386 Pa.Super. 382, 563 A.2d 118 (1989) and Uguccioni v. United States Fidelity and Guaranty Co., 408 Pa.Super. 511, 597 A.2d 149 (1991). Presumably, Allstate is arguing that because of the alleged inconsistency, the District Court erred in applying MacDonald and by predicting that the Pennsylvania Supreme Court “will follow the same reasoning as the Superior Court of Pennsylvania” did in MacDonald. App. 300. However, neither case is inconsistent with MacDonald.
In Federal Kemper, Hanna, while operating an ATV owned by Derr, struck Gap-pa, causing personal injuries and ultimately her death by suicide. At the time of the accident, Gappa was walking along a private road leading to a ten acre tract of land owned by Derr, located in the Roaring Creek Forest Preserve. Derr had given Hanna permission to operate the ATV.
The private road was the only means of ingress and egress to the Derr land, and likewise served about ninety other adjoining landowners in the Forest Preserve, all of whom possessed an easement over the private road for access to their properties. Derr, for many years before and after the accident, used a camper on his tract as a weekend and summer retreat. Derr’s principal residence was elsewhere.
Gappa’s estate sued Derr for negligence in allowing Hanna to operate the ATV. After Derr notified Federal Kemper, it sought a declaration that it had no duty to defend or to indemnify Derr. Federal Kemper’s complaint alleged that the location was not an “insured location” as defined by 114 of the policy and, coverage was, therefore, excluded. The parties stipulated that any exclusion would arise from 11114(b), 4© and/or 4(e). Paragraph 4 read, in pertinent part:
4. “insured location” means:
a. the residence premises;
b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the *162 Declarations or which is acquired by you during the policy period for your use as a residence;
c. any premises used by you in connection with the premises included in 4a or 4b....
e. vacant land owned by or rented to any insured other than farm land[.] 563 A.2d at 120.
The Superior Court affirmed the trial court’s finding that Derr’s property was not an insured location because it had not been purchased within the policy period so as to qualify as an insured location under 114b,[7] and therefore the court refused to find that the private road was an insured location under 1Í 4c. Accordingly, Federal Kemper is not inconsistent with MacDonald. Federal Kemper had nothing to do with whether the insured must have a legal interest in the place where the accident occurred to be considered premises “used in connection with” residence premises.
In Uguccioni, the Superior Court had to decide whether a private road in a private residential development was an insured location under a homeowner’s policy. The Superior Court held:
The language used in the policy to define an “insured location” clearly is broad enough to include roads in a private development which are available for use in achieving access to the insured residence.
Id. Uguccioni is not inconsistent with MacDonald because there is nothing in the Uguccioni opinion suggesting that the insured owned the private road on which the accident occurred. In fact, the opinion is silent as to ownership of the private road.
III. CONCLUSION
We believe that the District Court correctly predicted that the Pennsylvania Supreme Court would following the Superi- or’s Court’s reasoning in MacDonald. Accordingly, we will affirm the District Court
Allstate v. Drumheller, et al., 05-2591

. The District Court, exercising diversity jurisdiction in this declaratory judgment action, was obliged to apply the substantive law of Pennsylvania. Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir.2000) (citation omitted). Because there was no reported decision of the Pennsylvania Supreme Court addressing the issue presented here, it was the duty of the District Court to predict how the Pennsylvania Supreme Court would address it. Id. (citation omitted).

. To determine whether an insurer has a duty to defend an insured, a court must determine the scope of coverage under the insurance policy itself and then ascertain whether the complaint against the insured states a claim that is potentially covered under the policy. Britamco Underwriters Inc. v. Weiner, 431 Pa.Super. 276, 636 A.2d 649, 651 (1994). An insurance company must defend an insured whenever the complaint filed by the injured party may potentially come within the policy’s coverage. Pacific Indemnity Co. v. Linn, 766 F.2d 754, 760 (3d Cir.1985) (citing Gedeon v. State Farm Mut. Auto. Ins. Co., 410 Pa. 55, 188 A.2d 320, 321-22 (1963)). The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy itself. Id. (citing Cadwallader v. New Amersterdam Cas. Co., 396 Pa. 582, 152 A.2d 484 (1959)).
An insurer’s duty to defend an action against the insured is not necessarily coextensive with its obligation to indemnify the insured. West American Ins. Co. v. Lindepuu, 128 F.Supp.2d 220, 224-25 (E.D.Pa.2000) (citing C.H. Heist Caribe Corp. v. American Home Assurance Co., 640 F.2d 479, 481 (3d Cir.1981)). Whereas the duty to defend arises whenever the complaint filed by the injured party may fall within the scope of the policy's coverage, the duty to indemnify is more limited because it arises only if it is established that the insured’s damages are actually covered by the terms of the policy. Id. If there is no possibility that any of the underlying claims could be covered by the policy, then judgment in the insurer's favor with regard to the duty to defend and indemnify is appropriate. Id.

. Drumheller contends that Allstate’s appeal is untimely because the District Court's decision on remand was dated March 16, 2005, *155 but Allstate did not file its Notice of Appeal until May 9, 2005, or fifty-three days after the decision on remand.
However, Allstate’s appeal is timely. Although the decision on remand was dated March 16, 2005, it was not entered on the docket until April 14, 2005. Thus, the Notice of Appeal was timely filed “within 30 days after the judgment or order appealed from is entered.” F.R.A.P. 4(a)(1)(A).

. In Koppers Co., Inc. v. Aetna Cas. and Surety Co., 98 F.3d 1440 (3d Cir.1996), we said that
[w]e review the District Court's interpretation and prediction of state law de novo. In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue. We must also consider analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.
Id. at 1445.

. "The burden is on the insured to establish coverage under an insurance policy.” Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir.2001) (citation omitted). “It is the insurer, however, that bears the burden of establishing the applicability of an exclusion in an insurance contract, and exclusions are always strictly construed against the insurer and in favor of the insured.” Id. at 206-07 (citations omitted).

. We are not impressed with Allstate’s argument that it cannot be expected to anticipate every possible contingency and that the absence of such an explicit limitation is therefore not relevant. It is neither burdensome nor unreasonable to enforce a policy extending coverage to property regularly “used in connection with” the insured's premises without regard to the insured’s legal interest in such property. If the insurance company doesn’t require a legal interest in its definition, we will not interpret the policy in a manner that writes that limitation into the contract of insurance absent evidence that such a limitation was intended by the parties and consistent with the reasonable expectations of the insured. See Canal Insurance Co., v. Lloyds of London, 435 F.3d 431, 440 (3d Cir.2006).

. The policy period was June 23, 1982 to June 23, 1983. However, Derr purchased his tract in 1979.